71 F.3d 148
 1996 A.M.C. 330, 64 USLW 2380
 Shirley VODUSEK, Individually and as Personal Representative
of the Estate of Donald E. Vodusek, Sr., her
husband, Plaintiff-Appellant,
v.
BAYLINER MARINE CORPORATION; Stammer's Marine Center,
Incorporated, Defendants-Appellees.
 No. 94-1480.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 1, 1995.
Decided Dec. 6, 1995.
 
 ARGUED: Vicki Lynne Dexter, Irwin, Kerr, Green, McDonald & Dexter, Baltimore, Maryland, for Appellant. George Joseph Koelzer, Lane, Powell, Spears, Lubersky, Los Angeles, California, for Appellees. ON BRIEF: Kathleen M. McDonald, Bruce T. Carton, Irwin, Kerr, Green, McDonald & Dexter, Baltimore, Maryland, for Appellant. Carolyn J. Shields, Richard C. Burch, Dale B. Garbutt, Sandra Harlen Benzer, Lane, Powell, Spears, Lubersky, Los Angeles, California, for Appellees.
 Before NIEMEYER, MICHAEL, and MOTZ, Circuit Judges.
 Affirmed by published opinion. Judge NIEMEYER wrote the opinion, in which Judge MICHAEL and Judge MOTZ joined.
 OPINION
 NIEMEYER, Circuit Judge:
 
 
 1
 This personal injury case presents two questions of first impression in this circuit: (1) whether a jury may decide all issues in a case involving both admiralty and law claims, and (2) whether a district court may properly permit a jury to draw an adverse inference from a party's spoliation of relevant evidence. We resolve both questions affirmatively.
 
 
 2
 * In June 1989, Donald Vodusek, Sr., fueled his 28-foot cabin cruiser by siphoning gas from several gas cans in preparation for a family boat ride from Pasadena, Maryland, where the boat was docked, to Baltimore's Inner Harbor. When he turned on the bilge pump roughly a half-hour later, the boat exploded and burned, causing Vodusek second and third degree burns over half of his body. Three months later, Vodusek died from burn-related complications.
 
 
 3
 Vodusek's boat was manufactured in 1978 by Bayliner Marine Corp. and sold to Stammer's Marine Center, Inc., a retail dealer. In 1984 Stammer's Marine performed a warranty repair for the boat's first owner, described on a warranty claim form: "Gas Tank Hose was kinked by Seat in Cabin. Remove Seat and Reroute Hose." Apparently, the repair was performed to the satisfaction of all parties involved. Four years later, Vodusek purchased the boat used from Stammer's Marine.
 
 
 4
 Following the death of her husband, Shirley Vodusek (hereinafter "Vodusek"), filed suit against Bayliner and Stammer's Marine contending that the fire resulted from a faulty bilge pump switch which sparked and ignited vapors from a leaking fuel system. In her complaint, she alleged an array of negligence and products liability claims for injuries sustained by her husband and for wrongful death. She sued Bayliner at law, relying on diversity jurisdiction, and Stammer's Marine in admiralty because the fire occurred on navigable waters.[1] The complaint included a demand for jury trial on all claims.
 
 
 5
 The district court submitted Vodusek's entire case to the jury, which returned a verdict in favor of the defendants. But, because the district court remained uncertain of whether this case should have been tried with or without a jury, it also rendered an independent decision on the merits as a court in admiralty. It, too, found in favor of the defendants. In arriving at its decision, the court disqualified Douglas Halsey, Vodusek's expert witness--even though his testimony had been considered by the jury--on the grounds that (1) Halsey's testimony was speculative and not based upon scientific principles; (2) Halsey was not qualified to render an expert opinion on the design of the boat's fuel system; and (3) Halsey participated in the spoliation of relevant evidence. This appeal followed.
 
 
 6
 Vodusek contends that the entire case should have been tried exclusively to the jury and therefore that the bench trial was improper and unnecessary. In connection with the jury trial, she contends that the district court erred in (1) submitting to the jury the question of whether she engaged in the spoliation of evidence; (2) allowing cross-examination of her expert witness by depositions of experts who did not testify; and (3) interpreting 33 C.F.R. Sec. 183.554, a federal regulation requiring access to fuel system components on boats, as not covering fuel vent hoses. In connection with the bench trial, if found permissible, Vodusek contends that the court erred in disqualifying her expert witness and disregarding his testimony.
 
 
 7
 According to Bayliner and Stammer's Marine, this is an admiralty case that was properly decided by the court without a jury. Because the jury trial was unnecessary, they argue that this court need not review any issue arising from it.
 
 
 8
 For the reasons that follow, we conclude that the district court properly submitted the entire case to the jury and therefore that the bench trial was superfluous. We also reject Vodusek's assignments of error regarding the jury trial. Accordingly, we affirm.
 
 II
 
 9
 Because errors are assigned to both the jury and bench trials, we must first resolve whether all claims should have been submitted to a jury or some claims decided by the court without a jury.
 
 
 10
 In response to Vodusek's contention that this case was properly tried to the jury, Bayliner and Stammer's Marine contend that this case can be decided only in admiralty because the prerequisites of diversity jurisdiction, which formed the basis for allowing a jury trial, were not satisfied. Even though there was complete diversity between Vodusek and Bayliner to support the claims at law, Bayliner and Stammer's Marine argue that the court must consider the citizenship of all the parties to the action in deciding whether to submit a case to a jury, relying on Powell v. Offshore Navigation, 644 F.2d 1063 (5th Cir. Unit A.1981) (holding that citizenship of defendant named in admiralty claim must be considered in determining diversity jurisdiction over law claims in which admiralty defendant was not named), cert. denied, 454 U.S. 972, 102 S.Ct. 521, 70 L.Ed.2d 391 (1981). Because Stammer's Marine and Vodusek both have Maryland citizenship for diversity purposes, Bayliner and Stammer's Marine argue that complete diversity as required by Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806), does not exist. Without jurisdiction to maintain any claim at law, they argue, the court was not required to submit the case to the jury because admiralty cases are traditionally tried to the bench.
 
 
 11
 Federal courts are authorized, in one civil action, to exercise several types of subject matter jurisdiction historically exercised by separate courts, including courts of law, equity, and admiralty. As a result, a single federal court has at least three separate departments--law, equity, and admiralty--each of which has its own traditional procedures.[2] While the Seventh Amendment guarantees a jury trial in cases "at common law," no constitutional provision guarantees, or indeed prohibits, jury trials for cases tried in equity or in admiralty. Traditionally, however, admiralty courts and courts of equity did not rely on juries. See generally Fitzgerald v. United States Lines Co., 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963).
 
 
 12
 When a civil action involves claims that historically would have been tried in different courts and a jury trial is demanded, the procedure for submitting part of the case to a jury can be complicated. See, e.g., Ross v. Bernhard, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970) ("[h]owever difficult it may have been to define with precision the line between actions at law dealing with legal rights and suits in equity dealing with equitable matters," the Seventh Amendment right to jury trial on legal claims must be preserved, even when complaint combines claims in equity with claims at law); Dairy Queen, Inc. v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962) (holding that legal claims based on breach of contract must be determined by jury before final court determinations of equitable claims based on trademark infringement). While trials to different factfinders may be required in actions having law and equity components because of the jury's inability to fashion equitable remedies, that result is not compelled when claims at law and in admiralty, arising out of a single accident, are combined in a single complaint for damages. To render the trial process in that particular circumstance less cumbersome, confusing, and time-consuming, the Supreme Court has adopted the pragmatic procedural rule that both the admiralty claim and the law claim be decided by the jury so that "[o]nly one trier of fact [is] used for the trial of what is essentially one lawsuit to settle one claim split conceptually into separate parts because of historical developments." Fitzgerald, 374 U.S. at 21, 83 S.Ct. at 1650.
 
 
 13
 In Fitzgerald, an injured seaman sued his employer at law, alleging a claim for damages under the Jones Act, and in admiralty, alleging a claim for maintenance and cure. In ruling that both the admiralty and law claims should have been submitted to the jury, the Supreme Court focused on the confusion and complication that would result from trials before separate factfinders. The Court observed that the use of separate factfinders confounds the application of res judicata and collateral estoppel principles and unduly complicates damage calculations. With respect to the latter problem the Court explained:
 
 
 14
 It is extremely difficult for a judge in trying a maintenance and cure claim to ascertain, even with the use of special interrogatories, exactly what went into the damages awarded by a jury--how loss of earning power was calculated, how much was allowed for medical expenses and pain and suffering, how much was allowed for actual lost wages, and how much, if any, each of the recoveries was reduced by contributory negligence. This raises needless problems of who has the burden of proving exactly what the jury did. And even if the judge can find out what elements of damage the jury's verdict actually represented, he must still try to solve the puzzling problem of the bearing the jury's verdict should have on recovery under the different standards of the maintenance and cure claim. In the absence of some statutory or constitutional obstacle, an end should be put to such an unfortunate, outdated, and wasteful manner of trying these cases. Fortunately, there is no such obstacle.
 
 
 15
 374 U.S. at 19-20, 83 S.Ct. at 1649-50 (footnotes omitted).
 
 
 16
 While we recognize that the circumstances in the case before us are somewhat different from those in Fitzgerald, we believe that the same pragmatic rule articulated in Fitzgerald should apply. In this case, the claims in admiralty and the claims at law name different defendants, each of whom is alleged to have contributed to liability through different conduct. Nevertheless, all of Vodusek's claims arise from the same boating accident and the same resulting injuries. Accordingly, the underlying reasons that motivated the Court's decision in Fitzgerald counsel us to extend the Fitzgerald rule to the circumstances here. Submitting both the admiralty and law claims to the jury better ensures that neither duplicative nor inadequate damages are awarded. Application of the Fitzgerald rule also avoids the substantial problems of applying principles of collateral estoppel when claims are tried separately. If, for example, the jury decided against Vodusek on her claims at law, determining the extent to which that verdict should bar aspects of her admiralty claims might require submitting detailed and therefore complicating interrogatories to the jury. We conclude that when the accident and injuries underlying the plaintiff's law and admiralty damage claims are the same, the considerations underlying the pragmatic rule of Fitzgerald dictate its application, even when the plaintiff has named different defendants in those claims.
 
 
 17
 Bayliner and Stammer's Marine argue that the Fitzgerald rule cannot apply here because the presence of Stammer's Marine destroys complete diversity and, along with it, the jurisdictional basis for the law claims. We reject this argument because it fails to recognize that the federal rules enable district courts to exercise their power in the three historically separate departments within a single case.
 
 
 18
 If Vodusek had filed separate suits against Bayliner at law and against Stammer's Marine in admiralty, she would have had a jurisdictional basis to proceed with each suit. Bayliner is a Delaware corporation with its principal place of business in Washington, and Vodusek is a Maryland citizen. Because the amount in controversy exceeds $50,000, Vodusek could have filed her claim at law against Bayliner in a federal court under the jurisdictional grant of 28 U.S.C. Sec. 1332. Likewise, Vodusek's claim against Stammer's Marine could have been filed in admiralty under 28 U.S.C.App. Sec. 1333 and 46 U.S.C.App. Sec. 740 since the explosion and fire occurred on navigable waters. See Sisson v. Ruby, 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990); Price v. Price, 929 F.2d 131 (4th Cir.1991). That both of Vodusek's claims are combined in one complaint does not by itself defeat the subject matter jurisdiction the court would have had over separate suits. The federal rules preserve the right to invoke jurisdiction in the historically separate departments of the district court in a single action. See Fed.R.Civ.P. 1 (explaining that federal rules are applicable to all suits "whether cognizable as cases at law or in equity or in admiralty"); Fed.R.Civ.P. 9(h) (authorizing invocation of admiralty jurisdiction when claim could be based on some other jurisdictional ground as well); Fed.R.Civ.P. 18(a) and 20(a) (permitting joinder of claims at law, in equity, and in admiralty and joinder of parties); Fed.R.Civ.P. 82 (explaining that "[t]hese rules shall not be construed to extend or limit the jurisdiction of the United States district courts"). Because Vodusek's claims in law and admiralty can be joined without affecting the court's jurisdiction over the defendants in each historical department, we must yield to Vodusek's explicit election in naming a different defendant in the claims filed in each department.
 
 
 19
 We reject the Fifth Circuit's approach in Powell v. Offshore Navigation, Inc., 644 F.2d 1063 (1981) (holding that existence of non-diverse defendants, notwithstanding court's admiralty jurisdiction, destroyed plaintiff's right to jury trial). That decision, we believe, fails to recognize the facility provided by the federal rules for joining law and admiralty claims without destroying the jurisdictional and procedural distinctions between them. The decision also frustrates the choices preserved to litigants to invoke admiralty jurisdiction for one claim and to sue at law for another, electing a jury trial. See Barbara B. Woodhouse, Comment, Powell v. Offshore Navigation, Inc.: Jurisdiction Over Maritime Claims and the Right to Trial by Jury, 82 Colum. L.Rev. 784 (1982). See also Fitzgerald, 374 U.S. at 21, 83 S.Ct. at 1650; Hassinger v. Tideland Elec. Membership Corp., 627 F.Supp. 65 (E.D.N.C.1985), aff'd only on related grounds, 781 F.2d 1022 (4th Cir.), cert. denied, 478 U.S. 1004, 106 S.Ct. 3294, 92 L.Ed.2d 709 (1986).
 
 
 20
 Because the district court properly submitted all claims to the jury, its decision rendered as a court in admiralty is superfluous, and any alleged error in the bench trial need not be reviewed.
 
 III
 
 21
 We turn now to whether the district court properly submitted the spoliation of evidence question to the jury.
 
 
 22
 At trial, Vodusek sought to establish defendants' liability through the testimony of Douglas Halsey, whom she offered as an expert in marine vessel safety and the causes of fires on vessels. Halsey gave his opinion that gasoline vapors escaped from "a [leak] in the fuel tank vent hose somewhere in the area behind the starboard settee or bunk area" and that these vapors ignited when Donald Vodusek turned on the bilge pump, causing the explosion and fire. Although he was unable to specify precisely where the leak was or to demonstrate positively that a leak in fact existed, Halsey believed that a leak was caused by the vent hose's contact with the boat's underframe. He concluded that the routing of the fuel vent hose through the boat's cabin amounted to a defective design.
 
 
 23
 In examining the boat to discover the cause of the explosion and fire, Halsey, together with Vodusek's two sons, employed destructive methods which rendered many portions of the boat useless for examination by the defendants and their experts. On the effect of Halsey's investigative techniques, the district court noted:
 
 
 24
 Mr. Halsey and the Vodusek boys virtually attacked the boat with a chain saw and sledge hammer. The area which is critical to the theory eventually presented by Mr. Halsey, was literally ripped apart. The integrity of the structure was violated....
 
 
 25
 ... Mr. Halsey's activity made it impossible for his own theory to be verified or for the Defendants to make a full and fair inspection to develop alternative theories based on the evidence.
 
 
 26
 As a result of their inability to examine the boat and develop their own theory about what caused the explosion and fire, Bayliner and Stammer's Marine sought, over Vodusek's objection, to amend their answer before trial to include an affirmative defense based on the spoliation of evidence. The district court permitted the defendants to make that amendment and submitted the issue to the jury at trial. In instructing the jury, the court stated:
 
 
 27
 The defendants contend that their access to relevant and potentially relevant evidence was substantially hindered by the actions of plaintiff's counsel and agents, including Mr. Halsey.... [I]t is the duty of a party, a party's counsel and any expert witness, not to take action that will cause the destruction or loss of relevant evidence where that will hinder the other side from making its own examination and investigation of all potentially relevant evidence.
 
 
 28
 If you find in this case the plaintiff's counsel and agents, including Mr. Halsey, failed to fulfill this duty, then you may take this into account when considering the credibility of Mr. Halsey and his opinions and also you are permitted to, if you feel justified in doing so, assume that evidence made unavailable to the defendants by acts of plaintiff's counsel or agents, including Mr. Halsey, would have been unfavorable to the plaintiff's theory in the case.
 
 
 29
 Vodusek contends that she was prejudiced by the defendants' late pretrial amendment. She also contends that the court erred in instructing the jury on the spoliation issue because bad faith is a necessary element of the rule and there was no evidence that Vodusek or her agents acted in bad faith in examining the boat. She points out that to preserve the evidence, Halsey took photographs before, during, and after his investigation and videotaped his alteration of the boat. Vodusek also argues that Halsey needed to cut up the boat with a chain saw to reach otherwise inaccessible parts of the fuel system. She asserts, therefore, that his actions do not indicate bad faith.
 
 
 30
 Under the spoliation of evidence rule, an adverse inference may be drawn against a party who destroys relevant evidence. Even though application of the rule could prove to be critical to a party's recovery on a claim, it is not an affirmative defense, but a rule of evidence, to be administered at the discretion of the trial court. Consequently, a party need not indicate its intent to invoke the spoliation rule in the pleadings. See Donohoe v. American Isuzu Motors, Inc., 155 F.R.D. 515, 520 (M.D.Pa.1994) (spoliation rule is not an affirmative defense preventing recovery, but only "leads to the exclusion of evidence or the admission of negative evidence"). Because Bayliner and Stammer's Marine are required to plead only affirmative defenses, not evidence, see Fed.R.Civ.P. 8(c), Vodusek can claim no prejudice by the court's permitting amendment. In fact, Vodusek benefited from the defendants' advance notice of their intent to invoke the spoliation rule.
 
 
 31
 Vodusek's principal argument is that the defendants must show that she acted in bad faith before the jury can be permitted to draw adverse inferences as to what the boat would have revealed had it not been damaged. She maintains, "There was not a shred of evidence that [she] or her agents, acted willfully, or in bad faith, when Mr. Halsey examined the boat on December 28, 1989." She also argues that the district court erred in not including the requirement of bad faith as part of its jury instructions. We reject the argument that bad faith is an essential element of the spoliation rule.
 
 
 32
 As a general proposition, the trial court has broad discretion to permit a jury to draw adverse inferences from a party's failure to present evidence, the loss of evidence, or the destruction of evidence. While a finding of bad faith suffices to permit such an inference, it is not always necessary. See Glover v. BIC Corp., 6 F.3d 1318, 1329 (9th Cir.1993).
 
 
 33
 To draw an adverse inference from the absence, loss or destruction of evidence, it would have to appear that the evidence would have been relevant to an issue at trial and otherwise would naturally have been introduced into evidence. Even the mere failure, without more, to produce evidence that naturally would have elucidated a fact at issue permits an inference that "the party fears [to produce the evidence]; and this fear is some evidence that the circumstance or document or witness, if brought, would have exposed facts unfavorable to the party." 2 Wigmore on Evidence, Sec. 285 at 192 (Chadbourn rev. 1979).
 
 
 34
 A party's failure to produce evidence may, of course, be explained satisfactorily. When a proponent cannot produce original evidence of a fact because of loss or destruction of evidence, the court may permit proof by secondary evidence. See, e.g., Fed.R.Evid. 1004(1). But when a proponent's intentional conduct contributes to the loss or destruction of evidence, the trial court has discretion to pursue a wide range of responses both for the purpose of leveling the evidentiary playing field and for the purpose of sanctioning the improper conduct. See Welsh v. United States, 844 F.2d 1239, 1246 (6th Cir.1988); Nation-Wide Check Corp. v. Forest Hills Dist., Inc., 692 F.2d 214, 218 (1st Cir.1982). Even if a court determines not to exclude secondary evidence, it may still permit the jury to draw unfavorable inferences against the party responsible for the loss or destruction of the original evidence. An adverse inference about a party's consciousness of the weakness of his case, however, cannot be drawn merely from his negligent loss or destruction of evidence; the inference requires a showing that the party knew the evidence was relevant to some issue at trial and that his willful conduct resulted in its loss or destruction. See id. at 217-18.
 
 
 35
 While Vodusek may be correct in concluding that she and her expert did not act in bad faith in destroying portions of the boat, she does not dispute that those portions were permanently destroyed as part of Halsey's deliberate investigative efforts. While Halsey may have decided that the destroyed portions of the boat were not relevant to his theory of the case, that conclusion ignored the possibility that others might have entertained different theories to which the destroyed portions might have been relevant. In this case, both the defendants and the district court concluded that the destroyed portions were significant to the effort to explain where and why the boat explosion occurred. Indeed, throughout the course of this case, even Halsey's opinion of where the explosion occurred changed several times.
 
 
 36
 We conclude that the district court acted within its discretion in permitting the jury to draw an adverse inference if it found that Vodusek or her agents caused destruction or loss of relevant evidence. Rather than deciding the spoliation issue itself, the district court provided the jury with appropriate guidelines for evaluating the evidence.
 
 IV
 
 37
 Vodusek next contends that the trial judge improperly violated the hearsay rule, Federal Rule of Evidence 802, by permitting defendants' counsel to cross-examine her expert with deposition transcripts of experts who did not testify.
 
 
 38
 While Douglas Halsey, Vodusek's expert, gave his opinion at trial that the fuel vent hose leaked at a point near the front end of the fuel tank, other non-testifying experts had concluded in pretrial depositions that the fire started at the rear of the fuel tank where it is filled. Halsey testified at trial that he had read all of these non-testifying experts' depositions and disagreed with the experts' opinions. In light of that testimony, defendants' counsel cross-examined Halsey as to why he rejected those opinions, referring to the deposition transcripts that Halsey claimed to have read.
 
 
 39
 We believe that the district court acted within its discretion in permitting such cross-examination of Halsey. Once Halsey testified that he had read and rejected the other experts' out-of-court opinions on the source of the fire, defendants were free to explore the basis for that disagreement and to attempt to discredit Halsey's conclusion. While the district court permitted some latitude during this cross-examination into what otherwise would have been inadmissible hearsay, we conclude that the district court did not abuse its discretion.
 
 V
 
 40
 Finally, Vodusek argues that the district court erred in instructing the jury on the proper interpretation of 33 C.F.R. Sec. 183.554.[3] Noting that the regulation requires only that each "fitting, joint, and connection" in the boat's fuel system be accessible, the court concluded that a vent hose--which Vodusek contended leaked--is not a fitting, joint, or connection. The court stated:
 
 
 41
 I read the regulation as [not] covering an uninterrupted run of line, that is not a run of the black material, but only those points at which the line is connected or joined to something else. That in this case is the two ends of that rubber hose and I think ... one end of the hose attaches to the gas tank and the other attaches to the [through-hull] fixture ... but that the run of hose is not a fitting, joint or connection.
 
 
 42
 Whether the district court correctly interpreted the regulation is irrelevant because the jury never reached the negligent design issue. The jury concluded that the plaintiff had failed to prove that "a leak in the fuel tank vent hose in the cabin was a proximate cause of the fire." Because the jury's responses to special interrogatories indicate that it never reached the question to which the regulation might have pertained, Vodusek can demonstrate no harm from the court's interpretation.
 
 
 43
 Finding no reversible error in the conduct of the jury trial, we affirm the judgment of the district court.
 
 
 44
 AFFIRMED.
 
 
 
 [1]
 Vodusek alleged in her complaint:
 
 
 [5]
 As to the defendant Stammer's only, this is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Civil Judicial Procedure and Rules. This Court has admiralty jurisdiction over defendant Stammer's pursuant to 18 U.S.C. Sec. 1333 and 46 U.S.C. [App.] Sec. 740
 
 
 [6]
 This Court has diversity jurisdiction pursuant to 28 U.S.C. Sec. 1332 as to defendant Bayliner. The citizenship of plaintiff and defendant Bayliner is diverse and the amount in controversy exceeds Fifty Thousand Dollars ($50,000.00), exclusive of interest and costs
 
 
 [2]
 Article III of the Constitution provides, "The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and [its] Treaties ... [and] to all Cases of admiralty and maritime Jurisdiction." U.S. Const. art. 3, Sec. 2. Federal Rule of Civil Procedure 1 implements the constitutional provision, and Federal Rule of Civil Procedure 2 provides for "one form of action" known as a "civil action."
 
 
 [3]
 33 C.F.R. Sec. 183.554 provides:
 Each fuel system fitting, joint, and connection must be arranged so that it can be reached for inspection, removal, or maintenance without removal of permanent boat structure.