HARTFORD INSURANCE COMPANY OF THE MIDWEST, Plaintiff,

v.

AMERICAN AUTOMATIC SPRINKLER SYSTEMS, INC., Defendant.

Civ No. AMD 97–976.

United States District Court, D. Maryland.

Oct. 15, 1998.

Jeffrey Allan Wothers, Baltimore, MD, for Plaintiff.

Kevin Bock Karpinski, Allen, Johnson, Alexander & Karp, Baltimore, MD, for Defendant.

## MEMORANDUM

DAVIS, District Judge.

This is a subrogation action based on diversity of citizenship brought by Hartford Insurance Company of the Midwest ("Hartford") against American Automatic Sprinkler Systems ("American"). Hartford seeks to recover 1.6 million dollars for damages caused by a sprinkler system leak and consequent flooding at the Holiday Inn in Timonium, Maryland. Hartford alleged that American's construction and installation of the sprinkler system in 1982 was responsible for the leak; in the alternative, Hartford alleged that American's renovations of the system in 1996 were the cause of the flooding. The suit is based on theories of negligence, strict liability, and breach of contract under Maryland law.

American has moved for summary judgment, contending first, that Hartford's claims based on American's installation and construction of the sprinkler system are barred by Maryland's statute of repose and second, that Hartford has insufficient evidence to sustain its burden of proof as to its remaining claims.

Hartford has cross-moved for summary judgment. Primarily, it contends that because American discarded critical evidence, including the coupling,[1] Hartford should be awarded judgment as a matter of law, in part through the doctrine of spoliation. For the reasons discussed below, I will grant American's motion for summary judgment and deny Hartford's cross motion.

## I. FACTS

There is no dispute of material facts. In 1982, American designed and installed a sprinkler system at the Holiday Inn in Timonium, Maryland. The sprinkler system consists of three standpipe risers that are located in the hotel stairwells. Two of the three risers provide water to the sprinkler system. These two risers also contain valves which enable the fire department to connect hoses in case of a fire emergency.[2] The remaining riser does not supply water to the sprinkler system, but rather only connects to fire department hoses. The sprinkler system is designed with zone control assemblies that permit the system to be drained zone by zone, without disturbing the entire sprinkler system.

The system existed as it was initially installed by American until January 1996. At that time, the Holiday Inn sought to obtain "Select" status, which required that extensive renovations be completed.[3] As a part of these renovations, American returned to the Holiday Inn to replace the escutcheon plates. Escutcheon plates are plates located underneath a sprinkler head. The renovations took approximately one week to complete and were finished on January 26, 1996.

On February 7, 1996, the cap and coupling separated from standpipe riser # 1, which caused water to escape from the pipe and flood into the Holiday Inn. Water leaked into many of the guest rooms, the main atrium, the stairwells, and cascaded onto the exterior facade of the building. The building engineer, Seekford, was able to shut off the water main. An extensive clean-up began immediately. As might be expected, Hartford's insured enlisted American to make repairs. Two American employees, Klender and Brunner, arrived at the Holiday Inn and made the necessary repairs. They replaced a damaged section of the pipe, the cracked fire hose, the coupling, and reinstalled the original cap in its proper place. Klender and Brunner concluded that the pipe had frozen, in part because of unusually cold winter temperatures, and in part because of inadequate heating in the stairwell.[4] Seekford signed their work order and the employees left the Holiday Inn with the damaged materials.

Shortly thereafter, Hartford suggested to Seekford that he try to have the replaced pipe returned. Seekford, and later counsel for Hartford, contacted American and requested the return of the materials.[5] American informed Hartford on February 15, 1996, that it was no longer in possession of the pipe, as it had been discarded in a trash dumpster and removed from the premises in the usual course of business. This subrogation action followed.

## II. SUMMARY JUDGMENT STANDARD

Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings,

---

1. The coupling holds the cap on the pipe in place.

2. The standpipe riser that leaked was this type of riser.

3. For example, to achieve "Select" status, the Holiday Inn must have sufficient meeting room space, improved amenities in bedrooms, and other upgraded facilities.

4. As originally designed, the stair towers were intended to be insulated by 5/8" glass; however, only a 1/8" glass pane was installed, apparently as a cost saving measure.

5. The precise nature of these efforts is somewhat disputed by the parties, as Hartford claims that American repeatedly promised to return the pipe, and only later reported that it had discarded the pipe. This dispute, however, is not material to the resolution of the summary judgment motions.

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the facts, as well as the inferences to be drawn therefrom, must be viewed in the light most favorable to the nonmovant. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A party moving for summary judgment is entitled to a grant of summary judgment only if no issues of material fact remain for the trier of fact to determine at trial. *Id.* at 587, 106 S.Ct. 1348. A fact is material for purposes of summary judgment, if when applied to the substantive law, it affects the outcome of the litigation. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. "Summary judgment is not appropriate when there is an issue of fact for a jury to determine at trial, which is the case when there is sufficient evidence favoring the non-moving party upon which a jury can return a verdict for that party." *Shealy v. Winston,* 929 F.2d 1009, 1012 (4th Cir.1991).

A party opposing a properly supported motion for summary judgment bears the burden of establishing the existence of a genuine issue of material fact. *Anderson,* 477 U.S. at 248–49, 106 S.Ct. 2505. The nonmovant "cannot create a genuine issue of fact through mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985). *See O'Connor v. Consolidated Coin Caterers Corp.,* 56 F.3d 542, 545 (4th Cir.1995), *rev'd on other grounds,* 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). "When a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in [Rule 56] must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 6(e). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *Shealy,* 929 F.2d at 1012.

## III. SPOLIATION OF EVIDENCE

Hartford argues that it is entitled to judgment as a matter of law because American intentionally destroyed evidence that was critical to a determination of the cause of the water leak. Thus, Hartford contends that American's behavior warrants "application of the evidentiary spoliation doctrine." *See generally Anderson v. National R.R. Passenger Corp.,* 866 F.Supp. 937, 945 (E.D.Va. 1994), *aff'd,* 74 F.3d 1230 (4th Cir.1996).

The evidentiary spoliation doctrine is a rule of evidence, administered at the discretion of the trial court to respond to circumstances in which a party fails to present, loses, or destroys evidence. *Id; see also Vodusek v. Bayliner Marine Corp.,* 71 F.3d 148, 156 (4th Cir.1995). The spoliation doctrine authorizes a court to order dismissal, to grant summary judgment, or permit an adverse inference to be drawn against a party, as a means to "level the evidentiary playing field and for the purpose of sanctioning improper conduct." *Vodusek,* 71 F.3d at 156. The application of this rule "must take into account the blameworthiness of the offending party and the prejudice suffered by the opposing party." *Anderson,* 866 F.Supp. at 945. Additionally, whether or not a party has notice of the evidence's relevance to a lawsuit must be considered. *See id.*

Hartford seeks judgment as a matter of law against American because of its allegedly willful destruction of the pipe, as evidenced by its conflicting explanations as to the whereabouts of the pipe, and its resistance in helping to locate the pipe. Imposition of this drastic sanction, however, is plainly unwarranted on this record. The Fourth Circuit has held that it was error for a lower court to grant judgment against a spoliator, where that party did not destroy evidence intentionally and in the absence of bad faith. *See Cole,* 132 F.3d at 1047 (noting that the remedy of dismissal was "simply too severe" in a case where the plaintiff, without bad faith, destroyed the ladder at issue in the case). *Cole* recognized that the weight of

authority indicated that "absent bad-faith conduct, applying a rule of law that results in dismissal on the grounds of spoliation of evidence is not authorized." *Id.* at 1047.[6] *See also Schmid v. Milwaukee Elec. Tool Corp.,* 13 F.3d 76, 78–81 (3d Cir.1994) (reversing the district court's judgment for the defendant because the plaintiff did not intentionally destroy the evidence at issue, nor had a suit been filed at the time the evidence was destroyed).

Hartford has proffered no probative evidence supporting its claim that American destroyed the pipe willfully and in bad faith. In fact, it is undisputed that when Seekford initially requested the return of the pipe, he did not inform American of the possibility of a lawsuit, he did not mention the amount of damage to the Holiday Inn, and he did not explain why he wanted the materials returned. Moreover, American's witnesses testified, without contradiction, that American discarded the damaged pipe in the ordinary course of business. Thus, no substantial evidence supports the assertion that American willfully destroyed evidence it knew was relevant to a lawsuit. *See Anderson,* 866 F.Supp. at 945 ("[C]ases require at a minimum that the party must have tampered with the evidence in some way while on notice that the evidence 'might be necessary' to some party's claim.") (citation omitted). Accordingly, as there is insufficient evidence of willfulness or bad faith to warrant judgment as a matter of law for Hartford, I will deny Hartford's motion for summary judgment. *But see White v. Office of the Public Defender,* 170 F.R.D. 138 (D.Md.1997) (dismissing the plaintiff's complaint after she willfully destroyed evidence known to be relevant during discovery).

 Even in the absence of bad faith, however, a court has "broad discretion to permit a jury to draw adverse inferences from a party's failure to present evidence, the loss of evidence, or the destruction of evidence." *Vodusek,* 71 F.3d at 156. This inference suggests that the destroyed evidence would have been unfavorable to the party responsible for its destruction. *See Vodusek* 71 F.3d at 156; *Schmid,* 13 F.3d at

76. "An adverse inference about a party's consciousness of the weakness of his case, however, cannot be drawn merely from his negligent loss or destruction of evidence; the inference requires a showing that the party knew the evidence was relevant to some issue at trial and that his willful conduct resulted in its loss or destruction." *Vodusek,* 71 F.3d at 156. Although American is the party responsible for the disappearance of the piping, it is not disputed that Seekford did not make American aware that there might be lawsuit. Thus, Hartford has not made a *prima facie* showing that American knew or should have known, at the critical time, the "evidence was [or might be] relevant to some issue at [a potential] trial." *Id.* Consequently, I decline to draw an adverse inference against American.

Even were I to permit the jury to draw an adverse inference in this case (and, thus, were I to draw such an inference as a part of these summary judgment proceedings), however, such an inference does not "amount to substantive proof that the evidence was unfavorable." *DiLeo v. Nugent,* 88 Md.App. 59, 71, 592 A.2d 1126, 1131 (1991) (citing *Miller v. Montgomery County,* 64 Md.App. 202, 214, 494 A.2d 761, 761, *cert. denied,* 304 Md. 299, 498 A.2d 1185 (1985)). "The presumption that arises from a party's spoliation of evidence cannot be used by [a party] as a surrogate for presenting evidence of ... negligence in his prima facie case." *Anderson v. Litzenberg,* 115 Md.App. 549, 561, 694 A.2d 150, 156 (Md.App.1997). Consequently, even the allowance of this adverse inference would not alleviate Hartford of its burden to project evidence, as required by Fed.R.Civ.P. 56, which if believed would permit a reasonable fact finder to reach a verdict in its favor. *See also Stanojev v. Ebasco Serv., Inc.,* 643 F.2d 914, 923–924 n. 7 (2d Cir.1981) (noting that an adverse "inference could not serve to supply the missing element of the prima facie case"). As Hartford has failed to satisfy the requirements of its prima facie case,[7] its motion for summary judgment must be denied.

6. This reference to judicial authority was to the Virginia courts, as the case arose in Virginia. *See id.* at 1047.

7. See discussion, *infra,* section V.

## IV. STATUTE OF REPOSE

American argues that it is entitled to summary judgment on Hartford's negligence, strict liability, and contract claims that are based on the construction and installation of the original sprinkler system in 1982.[8] The Maryland statute of repose grants a defendant immunity from any cause of action for damages caused by a "defective and unsafe condition of an improvement to real property" occurring more than 20 years after the date the improvement becomes available for use. Md.Code Ann., Cts. & Jud.Proc. § 5–108(a) (1995). This statute was enacted as an "attempt to relieve builders, contractors, landlords, and realtors" from liability based on latent defects in improvements to property. *Allentown Plaza Assoc. v. Suburban Propane Gas Corp.*, 43 Md.App. 337, 342, 405 A.2d 326, 329 (1979).

The portion of the statute at issue in this case states:

> Except as provided by this section, a cause of action for damages does not accrue and a person may not seek contribution or indemnity from any architect, professional engineer, or contractor for damages incurred when wrongful death, personal injury, or injury to real or personal property, resulting from the defective and unsafe condition of an improvement to real property, occurs more than 10 years after the date the entire improvement first became available for its intended use.

Md.Cts. & Jud.Proc. § 5–108(b). This section was enacted in 1979 in response to complaints by architects and engineers that the general grant of immunity after 20 years was insufficient. *Rose v. Fox Pool Corp.*, 335 Md. 351, 366, 643 A.2d 906, 913 (1994). Contractors were added to the protected list in 1980. *Id.*

It is undisputed that the original construction of the system occurred in 1982, more than 10 years before the 1996 occurrence. Moreover, the parties do not dispute that the sprinkler system is an "improvement to real property." Consequently, the parties' only disagreement is whether the statute bestows immunity on American.

Hartford contends that American is not entitled to immunity because of its status as a *subcontractor*, rather than as a *contractor*. In support of this contention, Hartford relies on Maryland's Mechanic's Lien Law,[9] which provides separate definitions for contractor and subcontractor.[10] Thus, Hartford argues that the two entities are distinct, and therefore the statute of repose, in its sole reference to "contractors," intended to exclude subcontractors.

The rigid construction of the term "contractor" offered by Hartford is not warranted.

The goal of statutory construction is to determine and effectuate the Legislature's intention. Legislative intent is indicated primarily by the words of the provision.

---

8. Hartford alleges that American has waived this defense by failing to plead it in its answer. Although courts have characterized the statute of repose as a grant of immunity, *see Allentown Plaza Assoc. v. Suburban Propane Gas Corp.*, 43 Md.App. 337, 342, 405 A.2d 326, 329 (1979), for pleading purposes the statute serves as a statute of limitations. The provision is included in the Maryland Annotated Code in the Courts & Judicial Proceedings Article under the *Limitations* subtitle. Since American pled the defense of limitations in its answer, this defense clearly has not been waived.

Hartford also argues that even if the statute applies, the breach of contract claim should still be submitted to a jury. The crux of the contract claim, however, is based on the "defective and unsafe condition" of the pipe; thus, this claim, too, would be barred by the statute.

9. *See* Md.Code. Ann., Real Prop. § 9–101(d)(g) (1995). "Contractor" is defined as "a person who has a contract with the owner," and "sub-contractor" is defined as "a person who has a contract with anyone except the owner or his agent."

10. The Mechanic's Lien Law sets forth certain statutory requirements before subcontractors who have not been paid by their general contractor may seek relief against an owner of a building. *See* Md.Code Ann., Real Prop. § 9–101 *et seq.* Because the statute addresses the specific contractual relationships between general contractors and subcontractors, it is obvious why the statute defines them separately. This statute serves a drastically different purpose than the statute of repose, which seeks to protect those involved in the construction of real property improvements from liability for occurrences which are temporally remote. Thus, the definitions in the Mechanic's Lien Law are of scant relevance here.

In examining the language, however, we cannot view individual provisions in isolation, but must look at the entire statutory scheme. Also, we must consider the objective and purpose of the statute. Moreover, we seek to avoid constructions that are illogical, unreasonable, or inconsistent with common sense.

*Reed v. Sears, Roebuck, & Co.*, 934 F.Supp. 713, 717 (D.Md.1996) (quoting *Ward v. Department of Public Safety & Correctional Services*, 339 Md. 343, 351–52, 663 A.2d 66, 70 (1995)). The plain meaning of the term "contractor" encompasses the work of a subcontractor, as well as that of a general contractor. *See e.g.*, Black's Law Dictionary (A contractor is "a person who . . . undertakes to procure the performance of works or services on a large scale . . . whether for the public or a company or individual. Such are generally classified as general contractors and subcontractors.").[11] To exclude American from the protection of the statute of repose, drafted to shield those connected to the design and construction of an "improvement to real property," would be to ignore the manifest legislative intent of the drafters of the statutory immunity.

■ Consequently, the conclusion is inescapable that the statute of repose bars Hartford's negligence, strict liability, and breach of contract claims that are predicated on American's 1982 installation of the system. Therefore, I will grant American's motion for summary judgment on these counts.

## V. REMAINDER OF HARTFORD'S CLAIMS

The only claims that remain, then, are Hartford's rather redundant claims of negligence and breach of contract, as applied to the 1996 renovations. As demonstrated below, Hartford has not produced sufficient evidence to generate a genuine dispute of material fact as to certain elements of these claims. Accordingly, I will grant summary judgment in favor of American.

To satisfy the elements of its negligence claim, Hartford must demonstrate (1) that American owed a duty to the Holiday Inn, (2) that American breached that duty, (3) a causal connection between the breach of this duty and the flood, and (4) resulting damages. *See May v. Giant Food, Inc.*, 122 Md.App. 364, 712 A.2d 166 (1998). In support of this claim, Hartford argues that the American employees who renovated the system did not know the location of the sprinkler system components and did not know how the system was piped. Moreover, Hartford alleges that during the renovations, the water was drained from the pipes and repressurized each day. It argues, therefore, that this draining led to the separation of the cap and coupling from the pipe, causing the system to fail.

■ These allegations are insufficient to demonstrate a genuine issue of material fact that American was negligent in the renovations. American employees did not renovate the standpipe riser that leaked; rather, they replaced a completely different part of the system. Furthermore, there is no evidence that the water was drained from the entire system each day.[12] In fact, the evidence is to the contrary: that American did not drain the entire system, but rather proceeded to drain the water floor by floor. There is simply no basis on which a jury could conclude by a preponderance of the evidence that American breached any tort-based duty of reasonable care owed to the Holiday Inn in its renovations of the sprinkler system.

■ Similarly, Hartford has not demonstrated any evidence supporting its claim that American breached the 1996 contract, through negligent performance of the contract or otherwise. The contract called for the replacement of the escutcheon plates; the work was completed on January 26, 1996. As discussed above, Hartford has not generated a genuine issue of material fact as to

11. A contractor is also defined as "one who in pursuit of independent business undertakes to perform a job or piece of work, retaining in himself control of means, method, and manner of accomplishing the desired result." *Id.*

12. Seekford testified on deposition that on one occasion he was asked to open a water valve under the stairwell. Hartford exaggerates the significance of this incident, which does not translate into the repeated draining and repressurizing alleged to have caused the pipe leak. Moreover, Seekford further testified that he had no ability to describe how one would drain a sprinkler system, nor how it would be refilled.

whether American negligently damaged the riser at issue during the renovations. Although Hartford argues that the absence of the pipe is alone sufficient to preclude summary judgment, I disagree. Even if the pipe were available to the parties, it would not contradict the undisputed evidence that American did not perform any work on the riser that leaked. Nor has Hartford demonstrated a reasonable likelihood that if the pipe were available, its examination by an expert chosen by Hartford would reveal any secrets sufficient to supply proof that American employees, in spite of their testimony to the contrary, redrained the entire system every day, which in turn caused the leak and the resulting flood. Consequently, Hartford has failed to establish the existence of a genuine dispute of material fact on either its negligence or breach of contract claim based on the 1996 renovations.[13] The absence of the discarded material does not dictate a contrary result. Accordingly, I will grant summary judgment in American's favor.

## VI. CONCLUSION

For the reasons stated, judgment shall be entered in favor of defendant as to all claims. An order follows.

## ORDER

For the reasons set forth in the accompanying Memorandum, it is this 15th day of October, 1998, ORDERED

(1) That plaintiff's Motion for Summary Judgment is DENIED; and it is further ORDERED

(2) That defendant's Motion for Summary Judgment is GRANTED AND JUDGMENT IS ENTERED IN FAVOR OF DEFENDANT AS TO ALL CLAIMS; and it is further ORDERED

(3) That the clerk shall CLOSE THIS CASE and TRANSMIT copies of this Order and the accompanying Memorandum to counsel of record.

---

13. The conclusions of Hartford's experts highlight the lack of evidence on the negligent renovation claims. For example, the report of Roger Link lists five conclusions, none of which reference the renovations. In fact, he states that "the coupling and end cap assembly separated as a result of a problem with the installation or the parts installed by American." Although he disclaims that the precise cause cannot be determined because of the missing pipe, this conclusion does not implicate the renovations completed in 1996 whatsoever. Hartford's other expert, Webb, does mention the renovations work, yet does so in only two of his eight findings. He states that "the system, based upon the testimony, was not properly recharged following draining for alterations." There is no evidence substantiating this conclusion except for Seekford's testimony of turning on a water valve on one occasion. Thus, Hartford's expert opinion evidence reveals the insufficiency of the evidence as to its negligence and breach of contract claims based on the 1996 renovations.

Since I have granted summary judgment for American on all counts, American's motion to strike Hartford's last minute attempt to expand upon its expert's opinion by offering the testimony of Webb is moot. The admission of Webb's testimony would not alter my decision to grant summary judgment in favor of American, but, in any event, I would grant the motion to strike because the testimony was developed too late and unfairly prejudiced American's defense by coming after the close of discovery.