A separate Order will issue.

POTOMAC ELECTRIC POWER
CO., Plaintiff,

v.

ELECTRIC MOTOR SUPPLY,
INC., et al., Defendants.

No. CIV.A.S–98–2519.

United States District Court,
D. Maryland.

April 17, 2000.

---

James P. Gillece, Jr., Miles & Stockbridge P.C., Baltimore, MD, Paul J. Kelly, Jr., McGuire, Woods, Battle & Boothe, LLP, Baltimore, MD, for plaintiff.

Paul F. Kemp, Catterton, Kemp & Mason, Rockville, MD, Bruce L. Marcus, Marcus & Bonsib, Greenbelt, MD, James P. Ulwick, Kramon & Graham, Baltimore, MD, for defendants.

### MEMORANDUM AND ORDER

GESNER, United States Magistrate Judge.

Presently pending is Defendants' Motion for Appropriate Relief which, in essence, seeks reconsideration of this Court's November 29, 1999 Memorandum Opinion and Order granting Plaintiffs' Motion to Amend the Scheduling Order so as to allow the late designation of an expert witness. Also pending are Plaintiff's Opposition and Defendants' Reply. (Paper Nos. 56, 58,and 59, respectively). This case has been referred to the undersigned for resolution of discovery disputes. 28 U.S.C. § 636(b) and Local Rule 301. No hearing is necessary. Local Rule 105.6. For the reasons stated below, defendants' motion is denied.

### A. Background

On November 29, 1999, the Court issued a Memorandum Opinion and Order granting the Plaintiff's Motion to Amend the Scheduling Order to Designate an Expert Witness, Keith Flohr. (Paper Nos. 50 and 51).[1] In discussing plaintiff's claim that its failure to designate Mr. Flohr was a result of "inadvertent neglect", the Court expressed its concern regarding plaintiff's handling of the matter. (*Id.* at 8). Notwithstanding that concern, however, the Court focused on the law applicable to the question of whether to exclude an expert witness who had not been disclosed in accordance with a scheduling order. (*Id.*) After a full analysis of the pertinent law, the Court concluded that the late designation of Mr. Flohr by plaintiff should be permitted and, therefore, granted Plaintiff's Motion to Amend the Scheduling Order. (*Id.* at 11).[2]

Defendants filed objections to this Court's decision with the Honorable Frederic N. Smalkin who, by Order dated December 15, 1999, overruled defendants' objections. (Paper No. 54). In concluding that this Court's ruling were neither clearly erroneous nor contrary to law, Judge Smalkin noted that "[a]lthough adherence to scheduling orders is important, it is more important that a party not suffer on account of an attorney's inattention, at least where there is no prejudice to the other side that cannot be cured. In

---

1. In that Opinion, the Court also denied Defendants' Motion for a Protective Order. (*Id.* at 18–19).

2. The Court also imposed sanctions on plaintiff's counsel because of the disruption in the schedule resulting from plaintiff's actions. (*Id.* at 12).

this case, there is no such lasting prejudice." (*Id.*). Defendants' pending Motion for Appropriate Relief, in essence, seeks reconsideration of this Court's previous ruling which was affirmed by Judge Smalkin. For the reasons stated below, defendants have not offered any reasons to merit reconsideration of this Court's previous ruling and, therefore, defendants' motion should be denied.

## B. *Discussion*

In Defendants' Motion for Appropriate Relief, defendants maintain that evidence they have learned about since the Court issued its Memorandum Opinion establishes that the plaintiff's failure to name its expert was not "inadvertent" as this Court was led to believe and which resulted in the Court allowing plaintiff to belatedly designate Mr. Flohr. (Paper No. 56 at 2–4). Defendants appear to offer the following arguments in support of their request to exclude[3] Mr. Flohr's testimony: 1) the failure to designate Mr. Flohr could not have been "inadvertent" because plaintiffs' counsel did not even speak with Mr. Flohr until late August or possibly September, 1999 (*Id.* at 8); 2) the theories espoused in Mr. Flohr's letters (which plaintiff represented as being his opinions, including at the deposition of plaintiff's Rule 30(b)(6) witness), were different from those disclosed by him in his January 28, 2000 deposition (*Id.* at 3); 3) the testimony of Mr. Flohr pertains to eight (8) motors which are not the subject of the Complaint in this case[4] (*Id.* at 7); and 4) the samples allegedly tested by Mr. Flohr in 1994 were not properly preserved by plaintiff and that this "spoilation" of evidence mandates the exclusion of the expert opinions based on the "lost" evidence (*Id.* at 8).

The Court has considered the parties' submissions regarding the pending motion and concludes that defendants have not offered any reasons for the Court to reconsider its Memorandum Opinion of November 29, 1999 and strike the expert designation of Mr. Flohr. As discussed below, the Court rejects each of the reasons proffered by defendants in support of their request to strike Mr. Flohr as an expert.

First, with respect to defendants' argument that plaintiff's neglect was not inadvertent, plaintiff responds that it has already profered that the errors resulting in "inadvertent neglect" were made by a former associate and that this Court adequately addressed the issue in its November 29, 1999 Opinion. Moreover, plaintiff argues that defendants' arguments are "baseless in fact" in that plaintiff actually retained Mr. Flohr in 1994, not after it advised the Court that it had "inadvertently neglected" to designate him as a witness.[5]

The Court agrees that it has fully addressed the issue of "inadvertent neglect" in its November 29, 1999 Opinion and nothing in defendants' papers convinces the Court that its discussion of the issue should be revisited. Specifically, it is clear from the record that Mr. Flohr was hired in 1994 to do sample testing and whether he was formally rehired (if indeed he actually needed to be rehired) to testify at the trial of this case and do additional testing in August or September 1999 is of no consequence. The Court accepts the facts as recited by defendants and does not believe that those facts establish that the Court was misled when it issued its November 29, 1999 opinion. In sum, defendants' argument merely confirms the Court's view that the failure to timely designate Mr.

---

**3.** In addition to the striking of Mr. Flohr as an expert, defendants seek an award of attorneys' fees and costs for the deposition of Mr. Flohr and the filing of the instant motion. (Paper No. 56 at 9).

**4.** Acknowledging that their motion might not be the proper vehicle to address evidentiary issues, defendants note, without any detailed discussion, that Mr. Flohr's opinion is not based on recognized protocol or accepted testing procedures and, therefore, will be inadmissible under the reasoning of *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 594, 113 S.Ct. 2786, 125

L.Ed.2d 469 (1993). (Paper No. 56 at 7–8; Paper No. 59 at 4). The Court can only assume that defendants are not now seeking to have this Court analyze the admissibility of Mr. Flohr's testimony since they have not presented any analysis of the *Daubert* factors in their papers. Defendants, of course, can raise this evidentiary issue in an appropriate pretrial motion in limine.

**5.** Plaintiff offers the affidavit of Edwin Stowe, its corporate designee and chief investigator, to support this argument. (Paper No. 58 at 3).

Flohr as an expert was the product of neglect.[6]

■ Nor does the Court accept defendants' argument that Mr. Flohr's testimony should be excluded because he made changes to the opinions set forth in his July 11, 1994 opinion letter during his deposition on January 28, 2000. (Paper No. 56 at 3). While any alleged "changes" to Mr. Flohr's opinions may offer fertile ground for cross-examination at trial, the Court does not believe that any such "changes" mandate the exclusion of Mr. Flohr's testimony. Indeed, as plaintiff points out, Federal Rule of Civil Procedure 26(e)(1) specifically requires the supplementation or correction of expert opinions. Whether Mr. Flohr's deposition testimony is characterized as supplemental, corrective or additional, it is clear that the changes to his opinion were "both technically timely, and sufficiently in advance of trial that [they] cannot fairly be characterized as ambush tactics." *Tucker v. Ohtsu Tire & Rubber Co., Ltd.,* 49 F.Supp.2d 456, 461 (D.Md.1999). The "changed" opinions of Mr. Flohr offer no basis for exclusion of his testimony.

Defendants also argue that Mr. Flohr should not be permitted to testify because the eight (8) motors which he tested in 1999 are not among those specifically listed in the Complaint. (Paper No. 56 at 7). A review of the Complaint, however, refutes defendants' argument in that the Complaint makes clear that all motors repaired by the defendants are the subject of the lawsuit. (Paper No. 1 at ¶¶ 17–19). Nor does the listing of certain motors in the Complaint, as defendants claim, somehow limit plaintiff's proof to only those motors listed. *See* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1215 (1990)(enough if complaint puts defendant on notice of claims; discovery can fill in details). The Complaint provides ample notice to the defendants that all motors they repaired were the subject of this lawsuit and, therefore, the fact that Mr. Flohr tested eight (8) motors not specifically listed in the

Complaint does not offer a basis for the exclusion of his testimony.

Finally, defendants note in their motion that certain resin samples that Mr. Flohr tested in 1994 have been destroyed. (Paper No. 56 at 4–5). While defendants do not specify what relief they seek for the alleged "spoliation", (Paper No. 56 at 5), the Court assumes that defendants assert this as an additional basis warranting the exclusion of Mr. Flohr's testimony. In its opposition to defendants' motion, plaintiff discusses the "spoliation" doctrine at great length and argues that it is inapplicable to this case because the resin samples here were discarded by Mr. Flohr's former employer, Artech Corporation, as a result of bankruptcy proceedings and a change in management, without the knowledge of plaintiff. (Paper No. 58 at 5). Plaintiff concludes that these facts do not warrant dismissal or the less severe sanction of instructing the jury that it could draw an adverse inference from the absence of the evidence. (*Id.* at 4–7).

In reply to plaintiff's lengthy discussion of the issue, defendants merely reiterate that the destruction of the samples hampers their ability to defend the case and note, without discussion, that the Court has broad discretion to permit, at a minimum, the existence of an adverse inference. (Paper No. 59 at 3). For the reasons discussed below, the Court concludes that Mr. Flohr's testimony should not be excluded on the basis of the "spoliation" of evidence.

■ "The evidentiary spoliation doctrine is a rule of evidence, administered at the discretion of the trial court to respond to circumstances in which a party fails to present, loses, or destroys evidence." *Hartford Ins. Co. of Midwest v. American Automatic,* 23 F.Supp.2d 623, 626 (D.Md.1998). The court has wide discretion in addressing this situation ranging from ordering dismissal, granting summary judgment, or permitting an adverse inference to be drawn against the party as a means of leveling the playing field and sanctioning the conduct of the party. *Id.; see also Vodusek v. Bayliner Marine*

---

**6.** Notwithstanding defendants' argument to the contrary, (Paper No. 59 at 3), the Court believes that in the context of a pending lawsuit, it was the responsibility of plaintiff's counsel, not plaintiff, to timely designate its experts.

*Corp.*, 71 F.3d 148, 156 (4th Cir.1995). The rule takes into account the "blameworthiness of the offending party and the prejudice suffered by the opposing party." *Hartford*, 23 F.Supp.2d at 626.

██ Applying these principles to this case, while the defendants clearly may suffer some prejudice by their inability to replicate the testing of the destroyed 1994 samples, there is no evidence that the destruction was intentional or in bad faith. Without such a showing, imposition of a drastic sanction such as dismissal would be plainly unwarranted. *See Cole v. Keller Industries, Inc.*, 132 F.3d 1044, 1047 (4th Cir.1998) (dismissal too drastic a remedy where no evidence of bad faith in destroying ladder).

Similarly, the Court does not believe that exclusion of the expert's opinion is warranted by the destruction of the resin samples in this case. Courts have been reluctant to exclude an expert's testimony in the absence of intentional or bad faith destruction of evidence. *Compare Schmid v. Milwaukee Electric Tool Corp.*, 13 F.3d 76, 81 (3d Cir.1994)(striking testimony of expert witness too severe for expert's spoliation of evidence where there was very little fault on expert's part and very little prejudice to opposing party), *with Dillon v. Nissan Motor Co., Ltd.*, 986 F.2d 263, 267–69 (8th Cir.1993)(exclusion of expert's testimony and exhibits upheld where findings indicated that plaintiff's expert and counsel destroyed evidence that they knew or should have known was relevant to imminent litigation).

Indeed, in many cases, courts have merely sanctioned the intentional destruction of evidence by an adverse inference jury instruction. *See, e.g., Vodusek*, 71 F.3d at 156–57 (wholesale destruction of evidence making it impossible for defendant to fully and fairly inspect evidence to develop alternative theories sufficient to warrant trial court's submission of adverse inference instruction to the jury); *Shaffer v. RWP Group, Inc.*, 169 F.R.D. 19, 26–28 (E.D.N.Y.1996) (adverse inference appropriate where court found defendants "highly culpable" for destruction of documents which bore directly on issue of damages and would have been offered into evidence); *Howell v. Maytag*, 168 F.R.D.

502, 508 (M.D.Pa.1996)(adverse jury instruction, but not exclusion of expert's report, warranted by plaintiffs' removal of allegedly defective microwave to storage location and making of repairs to fire scene).

In this case, if the defendants believe they are entitled to an adverse inference jury instruction, they are free to file a pretrial motion in limine with Judge Smalkin. At this stage of the case, however, it is unclear whether defendants actually seek such an adverse inference instruction because, other than mentioning the availability of such an instruction, defendants do not discuss the issue in their papers. Of course, defendants must first establish that the plaintiff knew the evidence was relevant to an issue at trial and that its willful conduct resulted in the destruction of the evidence. *See Vodusek*, 71 F.3d at 156 ("An adverse inference about a party's consciousness of the weakness of his case, however, cannot be drawn merely from his negligent loss or destruction of evidence; the inference requires a showing that the party knew the evidence was relevant to some issue at trial and that his willful conduct resulted in its loss or destruction.").

In sum, for the foregoing reasons, the Court concludes that Mr. Flohr's testimony should not be excluded. Accordingly, Defendants' Motion for Appropriate Relief must be denied.

## C. *Conclusion*

For the reasons stated above, it this 17th day of April, 2000, HEREBY ORDERED:

1. Defendants' Motion for Reconsideration (Paper No. 56) is DENIED;

2. By Friday, April 28, 2000, counsel for plaintiff and defendants should confer and submit a proposed joint schedule to the undersigned addressing the timing of any additional discovery relating to Mr. Flohr's testimony; and

3. Upon receipt of the joint proposed schedule of the parties, the Court will schedule the deadline for dispositive motions.

4. The Clerk is directed to mail copies of this Memorandum and Order to counsel of record.