**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In re: MARK LOCKWOOD RICHARDS,
Debtor.

KENNETH F. DAVIES,
Plaintiff-Appellant,

v.

No. 95-1374

E. L. RICHARDS,
Defendant-Appellee,

and

MARK LOCKWOOD RICHARDS,
Defendant,

UNITED STATES TRUSTEE,
Party in Interest.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Marvin J. Garbis, District Judge.
(CA-94-2958, BK-91-5029-5-JS)

Argued: May 6, 1996

Decided: January 25, 1999

Before WIDENER and NIEMEYER, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Reversed by unpublished opinion. Judge Widener wrote the opinion,
in which Judge Niemeyer and Senior Judge Phillips joined.

_____

**COUNSEL**

**ARGUED:** Frederick Lewis Kobb, WRIGHT, CONSTABLE &
SKEEN, Baltimore, Maryland, for Appellant. Orbie R. Shively,
GEORGE W. LIEBMANN, P.A., Baltimore, Maryland, for Appellee.
**ON BRIEF:** Tracey D. King, WRIGHT, CONSTABLE & SKEEN,
Baltimore, Maryland, for Appellant. George W. Liebmann, GEORGE
W. LIEBMANN, P.A., Baltimore, Maryland, for Appellee.

———————————————————————————————

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

———————————————————————————————

**OPINION**

WIDENER, CIRCUIT JUDGE:

This appeal arises from an adversary proceeding in the chapter 11
bankruptcy case of Mark Lockwood Richards between plaintiff-
appellant Kenneth F. Davies and the debtor and defendant-appellee
Elzie Lockwood Richards, the debtor's father. The sole question is
whether the bankruptcy court abused its discretion when it decided
that plaintiff Davies failed to show good cause to extend the period
in which to serve defendant Elzie Lockwood Richards. The district
court answered this question in the negative. We reverse.

Mark Richards filed a chapter 7 bankruptcy petition on August 5,
1991 and a trustee was appointed on August 10, 1991. The case was
later converted to a chapter 11 proceeding and plaintiff Kenneth F.
Davies was appointed as examiner to investigate Mark's[1] transfer to
his father, Elzie, of $119,247.19, the proceeds of Mark's sale in 1990
of real estate in Delaware which Mark acquired from his father in 1982.[2]

———————————————————————————————

[1] We may refer to parties who share a common surname by their first
names.
[2] The record does not reveal the identity of the grantee to whom Mark
conveyed the property in 1990. Mark testified at deposition that Elzie
was living on the property in 1990.

Because 11 U.S.C. § 546(a) bars actions to set aside fraudulent transfers not commenced within "two years after the appointment of a trustee under Section 702" of the code, the statute of limitations for challenging the transfer expired on August 10, 1993. Davies mailed a letter dated July 28, 1993, however, to Elzie requesting his agreement to waive certain defenses[3] to a fraudulent transfer action.[4] Elzie signed the agreement on July 30, 1993 and returned it to Davies. In the agreement, Elzie acknowledged that "you [Davies] have been appointed as an Examiner in the bankruptcy case filed by my son . . . [and] are reviewing the transfer from my son to me of the proceeds from the sale of real estate in Delaware by check dated November 16, 1990 in the amount of $119,247.19 endorsed[by Mark] to me." Elzie agreed to waive the statute of limitations defense for "an action against me arising out of the transfer of the Delaware property or the transfer of the proceeds of sale to me, including but not limited to an action to recover the proceeds transferred to me, until October 31, 1993." Plaintiff Davies filed an adversary complaint naming Elzie as a defendant on October 29, 1993, thereby commencing the 120 day period in which Fed. R. Civ. P. 4 requires service to be accomplished. A summons was issued on November 1, 1993.

Bankruptcy Rule 7004(b)(1) provides service may be effected upon an individual simply by "mailing a copy of the summons and complaint to his dwelling house or usual place of abode," so on November 8, 1993, Davies mailed process to the last address Davies had in his files for Elzie Richards, 8311 Dawn Court, Ellicott City, Maryland, which was also Mark Richard's residence, and had been for six and one-half years before February 24, 1994. The envelope containing process was, in fact, addressed to Mark, who was also named as a party in the voluntary or fraudulent transfer complaint, but the summons inside clearly stated it was issued for Elzie. On November 9, 1993, Mark's attorney returned the summons and complaint to Davies, along with a letter stating that neither Mark nor his attorney

---

**3** In the agreement Elzie waived"any defense of the statute of limitations, estoppel, laches or other defense in which I assert that any action is not timely filed."
**4** The record does not reveal the address to which Davies mailed this letter to Elzie. It is undisputed, however, that Elzie received and signed the agreement.

were authorized to accept service for Elzie. Davies investigated, but neither telephone books nor directory assistance disclosed a listing for Elzie at the Ellicott City address, and neighbors in the area stated they did not know Elzie's location. Davies then inquired of attorneys representing Mark's creditors. During a deposition taken by the creditors, Mark testified his father lived in Tennessee, but Mark did not remember Elzie's address. He also did not know with certainty his father's first name. Additional information in the hands of the creditors indicated Elzie might have been purchasing property in Sparta, Tennessee. In the July 30, 1993 agreement to waive defenses, however, Elzie gave an address in Chicago, Illinois. Later information Davies received from a creditor's attorney suggested Elzie was living in Florida. Directory assistance inquiries in all of these locations proved unfruitful. Davies hired a process server and stated to the bankruptcy court that he attempted unsuccessfully to serve Elzie several times at an address in either Chicago or Nashville. Davies then sought credit bureau reports in the names of Elzie Lockwood Richards or E. Lockwood Richards, but no records could be found under either name. Davies also claims to have searched driving records to no avail.

Davies then sought Elzie's address by taking Mark's deposition. Davies represents in his brief, and Elzie does not deny, that Mark requested delays in the scheduling of the deposition which Davies complied with.[5] At oral argument, counsel for Davies stated, without contradiction, that Mark's deposition had been scheduled for two months in advance when Mark began to interpose delays. Davies finally deposed Mark on Thursday, February 24, 1994, two days before the expiration of the 120-day service period on February 26, 1994.

In the February 24 deposition, Mark provided an address and tele-

_____

[5] Counsel for Davies also represented to the bankruptcy court that scheduling difficulties delayed the determination of Elzie's address. We note that in the deposition taken by the creditors, Mark's counsel objected to questions about Elzie's whereabouts and Mark failed to provide specific information concerning his father's location. Davies also represented to the bankruptcy court that Mark's counsel refused to provide Elzie's address when it was requested at the bankruptcy court's original pretrial conference.

4

phone number for Elzie in Wilmington, Delaware. Mark disclosed, in answer to the question of where Elzie had been living before the Wilmington residence, "He was -- well, he's been very sick, so he's been living with a couple of different people while he was being taken care of prior to that." Mark also revealed that his father had been living with him during November 1993, the month during which Davies attempted to serve Elzie at Mark's address:

Q:**6** Okay. Was he ever living with you?

A: He was with me in November of 1993.

Q: Until how long?

A: Until just after Thanksgiving.**7**

Process was reissued and Davies served Elzie at the Wilmington address on March 14, 1994, sixteen days after the expiration of the 120-day period.

Elzie moved the bankruptcy court to dismiss the fraudulent or voluntary transfer complaint for failure of service. Davies did not move for an enlargement, but filed a response relating the difficulties of locating Elzie described above to show cause for the failure to serve within 120 days. At a hearing solely for argument on the motion, the bankruptcy court held:

[M]ore had to be done than what was done in this case, and one of the things that had to be done was within the 120-day period during which service had to be made, the plaintiff had to file a motion to extend the time and set forth the reasons why service has not been made.

Although the district court recognized that no motion was required to

_____

**6** Counsel for plaintiff Davies.
**7** Counsel for Davies then asked whether Elzie knew he had been named as a party in this suit. After objection by his counsel, Mark testified, "At this point I'm not sure."

5

extend the period for service, and no other reason was given by the bankruptcy court, it nevertheless affirmed on the parties' briefs, without argument. The court observed there was no "concrete evidence" to support the contention that Elzie had attempted to evade service and based its decision to affirm on the fact that the only actions to locate Elzie for which Davies stated a date in his memorandum took place in November, 1994 and Davies did not serve Elzie until 18 days after obtaining his address. The district court recognized that the efforts of the bankruptcy creditors, in whose interest Davies was acting, to recover the $119,247.19 transferred to Elzie might be barred if the suit were dismissed, but it considered this factor in isolation and concluded "this fact alone does not preclude dismissal." Likewise, the court accorded no weight in its decision to the fact that Elzie would not be prejudiced by an extension of the time for service. See 4A Wright, Miller and Kane, Federal Courts, 1998, § 2699.

Davies noted his appeal to this court. We review a decision to dismiss the plaintiff's action for untimely service under the same standard employed by the district court, abuse of discretion. Shao v. Link Cargo (Taiwan) Ltd., 986 F.2d 700, 708 (4th Cir. 1993). Davies contends that the bankruptcy court erred as a matter of law in concluding a motion was required to extend the time for service. We agree, as did the district court. Bankruptcy Rule 7004(a) makes the provisions of Rule 4 of the Federal Rules of Civil Procedure applicable to adversary proceedings. Bankruptcy Rule 7004(g), however, provides that "[t]he subdivisions of Rule 4 Fed. R. Civ. P. made applicable by these rules shall be the subdivisions of Rule 4 Fed. R. Civ. P. in effect on January 1, 1990, notwithstanding any amendment to Rule 4 Fed. R. Civ. P. subsequent thereto." Fed. R. Bankr. P. 7004(g)(West supp. 1996). Thus, while the 1993 amendments to the federal civil procedure rules added a new subdivision governing time limits for service - subdivision 4(m) - the provisions of former subdivision 4(j) are applicable in this case.

By its terms, subdivision 4(j) explicitly provides that a court must determine whether good cause exists for a party's failure to timely serve before the court can dismiss the action. Shao, 986 F.2d at 708. It does not require a motion for extension to be filed before good cause can be shown. 1 Moore's Federal Practice § 4.82[1] (3d Ed. 1998). While the better practice is to move for an extension, because

6

the rule imposes no requirement that plaintiff seek an extension, we conclude as did the district court that the bankruptcy court erred in holding that a motion was required.

That conclusion does not, of itself, dispose of the question of whether plaintiff is entitled to relief. Davies remains burdened to demonstrate good cause, that is, a good reason for the untimely service, and guidance on the circumstances that demonstrate that relief is appropriate is contained in the advisory comment to new subdivision 4(m) of Rule 4. We have previously recognized that new subdivision 4(m) is substantively identical to its predecessor, subdivision 4(j). Mendez v. Elliot, 45 F.3d 75, 78 (4th Cir. 1995). The advisory committee's note illustrates situations in which relief is appropriate under either subdivision:

> The new subdivision explicitly provides that the court shall allow additional time if there is good cause for the plaintiff's failure to effect service in the prescribed 120 days, and authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown. Such relief formerly was afforded in some cases, partly in reliance on Rule 6(b). Relief may be justified, for example, if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service.

Fed. R. Civ. P. 4(m) Advisory Committee's note.

In the context of a chapter 11 bankruptcy proceeding, the Supreme Court articulated the factors to be weighed in granting relief from a filing deadline on grounds of excusable neglect in Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership, 507 U.S. 380 (1993). The gist of the decision is that "the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." 507 U.S. at 395.

The relevant circumstances of this chapter 11 proceeding persuade us that the appropriate exercise of the bankruptcy court's discretion required it to extend the Rule 4(j) time limit to authorize plaintiff's 16 day delinquency in effecting service.

7

First, the fraudulent transfer involves a substantial sum of money, $119,247.19, the loss of which, if the money should have been property of the estate, would work a significant forfeiture on Mark's creditors.

Second, the circumstantial evidence overwhelmingly suggests that Elzie attempted to evade service. Elzie's July 30, 1993 letter agreement waiving defenses to the fraudulent transfer action informed him it was likely he would be named as a defendant in such a suit. In signing the letter agreement, Elzie listed his address as Chicago. In the deposition taken by the creditors, Mark testified that Elzie lived in Tennessee. Nothing else in the record, however, demonstrates that Elzie ever lived in either location or, if he did, that he left either postal or telephone forwarding instructions that plaintiff could have discovered. It is beyond dispute that Davies' initial attempt at mail service on November 8, 1993 gave Mark actual notice that both he and Elzie were named as defendants in the fraudulent transfer action. Mark testified that Elzie did live with him in November, 1993, and that Elzie did not move out until after Thanksgiving, well after the date when Mark learned that service was being sought on Elzie. Mark testified that Elzie then lived "with a couple of different people," during the remaining period for service, changing residences because he was "very sick." Again, however, the record contains no evidence documenting Elzie's actual whereabouts or the medical reasons that necessitated his moves, and, so far as this record is concerned, Elzie left no forwarding information when he changed locations. Since the "verification of motions by affidavit is the general practice," Switzer Bros. Inc. v. Byrne, 242 F.2d 909, 912 (6th Cir. 1957), in an equitable determination governed by the court's discretion in chapter 11, a party who allows the record to remain silent on a material issue when the circumstances strongly favor his opponent gives the court no grounds to resist an inference against him. See Vodusek v. Bayliner Marine Corp., 71 F.3d 148, 155 (4th cir. 1995); Wigmore on Evidence, Chadbourn Ed. 1979, § 285.

Third, the circumstances also suggest the possibility that Davies initial service was valid, and the probability that Elzie had actual notice of the suit on November 8 or 9, 1993, and that this fact was concealed because the envelope containing process was addressed to Mark. Service in bankruptcy is not governed entirely by Fed. R. Civ.

8

P. 4. Rather, Bankruptcy Rule 7004(b)(1) allows for mail service to the defendants "dwelling house or usual place of abode" without the requirement, imposed by subdivision 4(c)(2)(C)(ii) of former Rule 4, for the defendant to return acknowledgment of service. See Fed. R. Bankr. P. 7004(a) & (b)(1); Fed. R. Civ. P. 4(c)(2)(C)(ii) (1990). A "dwelling house or usual place of abode" may be one of many residences visited periodically by the person to be served. National Development Company v. Triad Holding Corp., 930 F.2d 253, 256-258 (2d Cir. 1991), cert. denied, Khashogi v. National Development Co., 502 U.S. 968 (1991). In particular, it may be a residence visited occasionally and titled in the name of the son of the person to be served, where the person to be served travels and does not hold title to other property in his own name. In re Premium Sales Corp., 182 B.R. 349, 351-52, 354 (Bankr. S.D. Fla. 1995).

Mark did not state in his deposition precisely when Elzie's stay with him ended. As of November 8 and 9, however, plaintiff Davies clearly found Mark's Ellicott City address to be the correct address for Elzie. In the letter returning process to Davies, Mark's counsel did not state that he knew whether Elzie was or was not living with Mark when service was attempted, but only that neither counsel nor Mark was authorized to accept service for Elzie.

In this case, the record shows that Elzie was living with his son, Mark, on the critical dates of November 8 and 9, 1993, and that on the 8th or 9th Mark received the summons and complaint suing both himself and Elzie for the voluntary or fraudulent conveyance of $119,247.19, plus interest. The district court apparently felt that the half denial of Mark that he discussed the complaint with his father and the denial of authority to accept service, which amounted to little or nothing more than a confession and avoidance, was a sufficient reason to find that good cause had not been shown or that Elzie was not avoiding service of process. We do not. Even if this is considered a fact finding, we are of the definite and firm conviction that a mistake has been committed. See United States v. Gypsum Co., 333 U.S. 364, 395 (1948); Bankruptcy Rule 7052 makes applicable Fed. R. Civ. P. 52.

Finally, the nature of the fraudulent or voluntary conveyance action, challenging the conveyance of real property and negotiation of

9

a check, suggests that much of the evidence in that action will be documentary.**8** There is no showing that allowing the action to proceed despite the 16 day delay in service will prejudice the defendant's defense in a trial on the merits or adversely effect the ability of the bankruptcy court to conduct a fair proceeding. While we agree with the bankruptcy court that more could have been done to attempt to ensure timely service, it cannot be questioned that plaintiff acted in good faith and the difficulties plaintiff encountered in effecting service were largely due to defendants' own actions. We thus conclude that the bankruptcy court abused its discretion in holding the service invalid.

The decision of the district court is accordingly

REVERSED.

_____

**8** The documentary evidence recited in plaintiff's complaint, a 1982 deed evidencing a conveyance from Elzie to Mark and a check drawn on a law firm's trust account in the amount of the sale, payable to Mark and endorsed to Elzie, suggests a likelihood of success on the merits, absent circumstances not argued here.

10