**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

COTTEN & SELFON, a dissolved
partnership,

　　　　　　*Plaintiff-Appellant,*

　　　　　　v.

RONALD R. CHARNOCK, individually
and as Executor of the Estate of
Benjamin W. Cotten; CRISTIN T.
COTTEN,

　　　　　　*Defendants-Appellees.*

No. 00-1498

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-99-141-A)

Argued: February 26, 2001

Decided: March 27, 2001

Before WIDENER, MOTZ, and KING, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** George R. Kucik, ARENT, FOX, KINTNER, PLOTKIN
& KAHN, P.L.L.C., Washington, D.C., for Appellant. John Joseph
Brennan, III, JACKSON & CAMPBELL, P.C., Washington, D.C., for
Appellees. **ON BRIEF:** Anne L. Milem, Courtney A. Sullivan,

ARENT, FOX, KINTNER, PLOTKIN & KAHN, P.L.L.C., Washington, D.C., for Appellant. Vernon W. Johnson, III, JACKSON & CAMPBELL, P.C., Washington, D.C., for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

This case involves a dispute arising out of a stock transfer from the founder and part-owner of a corporation to his longtime friend and lawyer for the corporation. Following the lawyer's death, his partnership sued his estate, his wife, and the transferor, claiming that the proceeds from the eventual sale of stock belonged to the partnership; the estate counterclaimed asserting its entitlement to insurance proceeds on the decedent's life. At the conclusion of the partnership's case, the district court granted the defendants' motion for judgment as a matter of law. The parties then entered into an oral settlement agreement as to the counterclaim, which the district court later enforced. The partnership appeals, maintaining that the district court erred in granting the defendants judgment as a matter of law and in enforcing the settlement agreement. We affirm.

I.

Benjamin Cotten and Ronald Charnock were longtime friends and business associates. Cotten's law firm, Cotten & Selfon and its predecessors, served as counsel for Charnock's corporation, NPRI, Inc., from its creation in 1981.

In 1991, at Charnock's request, Cotten drafted a "Proposal for Equity Participation in NPRI, Inc.," regarding the organization of a formal Board of Directors for NPRI. Charnock relayed this proposal via letter to his NPRI co-owners, suggesting in part that Cotten

become a formal Board member and receive 10% of NPRI stock "in exchange for his involvement with the company from its inception and would be treated as a form of bonus." This letter also stated that if NPRI chose not to adopt this proposal, Charnock would give Cotten the stock out of his personal holdings. NPRI never adopted the proposal.

In 1992, Cotten transferred 80 shares of his own NPRI stock to Cotten as a gift, sending Cotten a personal letter thanking him for his friendship and "advice and counsel" and stating that "[m]uch of what I am, particularly on a professional level, is due to our relationship." As its founder and President, Charnock expressed how much NPRI meant to him and further stated that "[t]he decision that I made to gift the stock to you was based as much on your contributions to date as it was for the contributions I'm confident you'll make to the company in the future."

Although the record evidence clearly demonstrates that Cotten never attempted to keep this gift a secret, Cotten's law partner, Bruce Selfon, claims that he did not learn of Cotten's NPRI stock ownership until late 1996. According to Selfon, at that time he questioned the propriety of owning stock in a client corporation, but nonetheless asked Cotten to use the stock to pay down an existing Cotten & Selfon $250,000 line of credit; Selfon does not maintain that he ever asked Cotten to turn all of the stock over to the law firm. According to Selfon, Cotten agreed to pay down the line of credit, but in 1997 sold the stock and used the proceeds, in excess of $1 million, to purchase a home.

Cotten died in April 1998. In February 1999, Cotten & Selfon ("the Partnership") filed suit against Cotten's wife, Cristin, and Charnock, individually and as Executor of Cotten's Estate ("the Estate"). The complaint alleged nine counts based on the stock transfer, including breach of contract, breach of fiduciary duty, conversion, fraud, and civil conspiracy. The Estate counterclaimed against Selfon and the Partnership for a breach of contract and breach of fiduciary duty for failure to pay life insurance proceeds on Cotten's life to the Estate.

A jury trial began in January 2000. At the conclusion of the Partnership's case, the defendants moved for judgment as a matter of law

under Fed. R. Civ. P. 50. The district court granted the motion and entered judgment against the Partnership on all of its claims, finding that "in this case there isn't any evidence to go forward to the jury. The evidence is clear that [the stock transfer] was a gift," thus the stock did not belong to the Partnership.

After this ruling, the Partnership and Estate reached an oral settlement of the Estate's counterclaim, with the Partnership agreeing to pay the Estate $350,000. The district court issued a final order and judgment enforcing the settlement agreement on April 7, 2000. This appeal followed.

## II.

We review a district court's grant of a motion for judgment de novo and must affirm if the non-moving party failed to provide "substantial evidence in the record upon which the jury could find" in its favor. *Havird Oil Co. v. Marathon Oil, Co.*, 149 F.3d 283, 289 (4th Cir. 1998).

The Partnership's principal contention on appeal is that it produced sufficient evidence to allow a jury to find that Cotten received stock from Charnock in violation of the partnership agreement and governing District of Columbia partnership law.[1] Specifically, the Partnership contends that the stock was "property, profit or [a] benefit derived by [Cotten] in the conduct of partnership business," D.C. Code Ann. § 41-154.4, or a "fee[ ], commission[ ], or reward[ ] from [the Partnership's] legal business," to which the Partnership is entitled. Brief of Appellant at 13.

In attempting to prove its case, the Partnership adduced uncontra-

---

[1]The defendants argue that the Partnership waived its right to appeal its claim, because the settlement agreement encompassed the entire case, including the claim disposed of under Rule 50. We need not reach this issue because we conclude that even if the Partnership's claim was not part of the settlement agreement and it therefore retained its right to appeal this issue, the district court properly granted judgment to the defendants. For the same reason, we deny as moot what the Partnership styles a "Motion to Dismiss."

dicted evidence and testimony that Charnock intended this stock to be a gift; that the reason behind this gift was Cotten's longtime personal and professional relationship with Charnock; that NPRI had paid all of its legal bills from the Partnership; that Cotten never attempted to keep this stock transfer a secret from Selfon; and that Selfon, upon learning of the stock transfer, did not demand that Cotten turn over the stock to the Partnership. Of course, none of these facts support the Partnership's position. For this reason, the Partnership was forced to rely mainly on its counsel's assertions that the gift of stock was a ruse to cover up what was truly a "bonus" for legal services.

According to the Partnership, several other pieces of evidence support its position and would have allowed a jury to find that the stock was not a gift to Cotten, but instead a "bonus" for legal services that belonged to the Partnership. But none of this other evidence actually contradicts the evidence and testimony that the stock transfer was in fact a gift rather than compensation for "partnership business." Thus, there is not "substantial evidence in the record upon which the jury" could reasonably adopt the Partnership's theory. *Havird Oil*, 149 F.3d at 289.

For example, the Partnership argues that the "Proposal for Equity Participation in NPRI, Inc." and Charnock's letter suggesting that NPRI adopt the proposal is evidence supporting its theory. Under the proposal and letter, Cotten would have received 10% of NPRI's stock "in exchange for his involvement with the company from its inception and would be treated as a form of bonus." The Partnership contends that this shows that the gift to Cotten was actually a "bonus." There is uncontradicted testimony, however, that NPRI never adopted this "bonus" proposal. Instead, Charnock gave Cotten the stock from his personal holdings. The Partnership's claim that the gift was a cover for the bonus proposal is mere speculation, without any evidentiary basis.

The Partnership also elicited testimony from Ernie Connon, who purchased 80 shares of NPRI stock in May 1992. Connon testified that when he asked Charnock why Cotten received his stock for free, Charnock stated that "Ben [Cotten] had done a lot of things for him in the early days when he was setting up the company, and that he felt it was something that was due to him." Despite the Partnership's pro-

testations, this is not inconsistent with Charnock's statements that the stock was a gift. Charnock may well have felt that the stock was "due to" Cotten, but gifts can certainly be based on feelings of obligation. It does not follow that the stock was "due to him" for legal services or was a "reward" derived from the "legal business."

The testimony of Daniel Schumack, a former associate at Cotten & Selfon, does no more to sustain the Partnership's case. Schumack wrote a memo regarding the "NPRI Stock Transactions," stating in part that "[t]he 'gift' of stock will be suspect, given the attorney-for-pay relationship you have had with Ron [Charnock] for years." The Partnership contends that this memorandum evidenced a scheme to hide the stock "bonus" as a gift. But this assertion is belied by Schumack's uncontradicted testimony that at the time that he wrote the memorandum, "it was a foregone conclusion" that Cotten was to receive the gift, and "the only thing left to do was to print the stock certificate." As it was already a "foregone conclusion," Schumack's memorandum does not contradict Charnock's previously formed donative intent.

Moreover, Schumack's uncontradicted testimony is that this memorandum concerned whether the IRS would have treated the transfer as a gift, not whether Charnock intended the stock to be a gift or a bonus for legal services. This memorandum does nothing to contradict Charnock's stated intention that he was giving a gift to his old friend Cotten. Indeed, Schumack was an impartial witness who never wavered in his testimony that the stock was a gift.

The Partnership also asserts the stock was not a gift because Charnock did not file a gift tax return. Brief of Appellant at 6. That, however, is a misstatement of the record evidence. Charnock testified that he did not recall whether he filed a gift tax return, but it "would be with my tax returns if I did." The Partnership never introduced Charnock's tax returns, thus there is no record evidence either way on this point. In any event, Charnock had no motivation to treat the stock transfer as a gift if it was truly a "bonus" for legal services. Charnock may have been liable for the tax on a gift, but if the stock was payment for legal services Charnock might well have been able to deduct it as a business expense.

The Partnership also relies on the gift letter from Charnock to Cotten, as well as Cotten's subsequent letter of gratitude. Charnock's letter stated in part that "[t]he decision that I made to gift the stock to you was based as much on your contributions to date as it was for the contributions I'm confident you'll make to the company in the future." Again, there is no evidence that the "contributions" spoken of in this letter are legal services, payment for which is due to the Partnership. The evidence shows that Cotten made both personal and professional contributions to Charnock and his company. The Partnership provided insufficient evidence to demonstrate that the stock was compensation for unidentified legal services, to which it was entitled.

The Partnership's reading of Cotten's "thank you letter" is also untenable. The letter stated in part that:

> One of the best definitions of a friend I have ever heard is that "a friend is one who knows all about you and likes you just the same." We may need to couple a phrase to that description that says something about avoiding a subpoena to testify, but perhaps that is admitting too much.

The Partnership argues that a jury could read the "avoiding a subpoena" language as "code" that the two "should keep the transaction a secret." Brief of Appellant at 6. There is no reasonable basis for such a speculative reading. In the context of the rather idiosyncratic correspondence between Charnock and Cotten, the language was obviously a joking nod to how well the two knew each other.

Ultimately, even if it is true that Charnock gave Cotten the stock because he thought it was "due to him," there is no evidence that it was a "benefit" or "reward" derived from the legal business such that it would be due to the Partnership. The Partnership did not identify the "legal business" for which the stock was compensation. The Partnership did not elicit testimony from the other NPRI owners that this transfer was actually a "bonus" for legal services. Nor did the Partnership provide evidence that Selfon asked Cotten to remit all of the stock to the Partnership. Indeed, it was not until after the NPRI stock greatly increased in value that Selfon made any effort to obtain any benefit from the stock for the Partnership.

Thus record evidence establishes that the stock was a gift for friendship and business assistance, not payment for legal work, which had already been billed and paid in full. The Partnership was given a full opportunity to present its case, but failed to produce sufficient evidence to sustain its theory. The district court thus did not err in granting defendants' motion for judgment as a matter of law.[2]

## III.

Additionally, the Partnership contends that the district court lacked jurisdiction to construe or enforce the parties' settlement agreement because the agreement had not previously "been approved and incorporated into an order of the court." Brief of Appellant at 27 (quoting *Columbus-America Disc. Group v. Atl. Mut. Ins.*, 203 F.3d 291, 299 (4th Cir. 2000)). The Partnership relies on three inapposite cases. *See Columbus-America*; *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 378, 377-78 (1994); *Fairfax Countywide Citizens v. Fairfax County*, 571 F.2d 1299, 1301 (4th Cir. 1978). In each of those cases after the parties settled, the court then attempted to *re-open* the case or enforce the agreement without having explicitly kept jurisdiction

---

[2]The Partnership also claims that the district court erred by failing to draw an adverse inference against the defendants, based on the fact that Charnock destroyed documents during discovery. The Partnership argues that "[s]poilation of evidence permits an adverse inference against the culpable party." Brief of Appellant at 24 (citing and relying almost entirely on *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 155 (4th Cir. 1996)).

This argument fails. First, "the *trial court has broad discretion* to permit a jury to draw adverse inferences from a party's . . . destruction of evidence." *Vodusek*, 71 F.3d at 156 (emphasis added). Moreover, the Partnership had to prove that Charnock knew the evidence was relevant to an issue at trial and that he willfully caused the destruction of that evidence. *See id. See also Hartford Ins. Co. of the Midwest v. American Automatic Sprinkler Sys., Inc.*, 201 F.3d 538, 543-44 (4th Cir. 2000). Charnock testified, and the Partnership presented nothing to contradict his testimony, that he "knew [the documents] had absolutely no relevance to this case . . . . [T]hey were documents that were very, very old and simply stored in a storage space." Accordingly, the district court did not abuse its discretion in declining to submit the spoilation question to the jury.

over the case. In this situation, appellate courts held that the trial court no longer had jurisdiction to enforce the settlement.

In contrast, here, in January the parties entered into an oral settlement of the counterclaim, following the grant of judgment on the Partnership's claims; but certain conditions remained unresolved. The district court retained jurisdiction until it issued a final order on April 7, 2000, in which it enforced the oral settlement and entered a judgment, finally disposing of the entire case. Thus, unlike the cases cited above, the district court did not dispose of the case or relinquish jurisdiction until April 7. As such, the district court had jurisdiction to enforce the settlement agreement, and the Partnership's assertions to the contrary are meritless.[3]

## IV.

Therefore, the district court's judgment is hereby

*AFFIRMED.*

---

[3]Accordingly, the Partnership's entire "Conditional Argument," that the district court erred by denying summary judgment on the counterclaims is moot, as the parties settled the counterclaims and the district court had jurisdiction to enforce that settlement.