**CONGRESSIONAL AIR, LTD., Plaintiff,**

v.

**BEECH AIRCRAFT CORPORATION, Defendant.**

**Civ. A. No. DKC 96–2322.**

United States District Court, D. Maryland, Southern Division.

Nov. 13, 1997.

Kathryn A. Ledig, Tigert & Ledig, Fairfax, VA, for Congressional Air, Ltd.

Elizabeth C. Honeywell, Paul D. Barker, Jr., Venable, Baetjer & Howard, L.L.P., Baltimore, MD, Larry B. Spikes, Martin, Pringle, Oliver, Wallace, Swartz, L.L.P., Wichita, KS, for Beech Aircraft Corporation.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S EXPERT'S NEW REPORT**

DAY, United States Magistrate Judge.

Defendant, Beech Aircraft Corporation ("Beech"), filed Beech's Motion to Strike Plaintiff's Expert's New Report ("Defendant's Motion") in an effort to exclude a report filed by plaintiff's expert, Dr. Douglas Chisholm, prepared on September 24, 1997 and served upon Beech on October 17, 1997. The Court has considered Defendant's Motion, the opposition and reply thereto, and deems that no hearing is necessary. Local

Rule 105.6 (D.Md.) The Court GRANTS Defendant's Motion for the reasons set forth below.

## I. *The September 24, 1997 Report Was Not Timely Served.*

The parties made timely disclosures of their initial expert's reports pursuant to Fed. R.Civ.P. 26(a)(2) and the Scheduling Orders issued by the Court. Plaintiff, Congressional Air Limited, ("Congressional"), produced a January 21, 1997 expert report prepared by Dr. Chisholm, which sets forth five points under a section entitled, "Conclusions and Opinions." Of particular interest are points 4 and 5.

4. But for the presence of the defectively designed hole for the grease fitting, the fatigue cracks would not have initiated and propagated to a critical size causing the rod end to fracture in normal use.

5. The defective and unreasonably dangerous design of nose gear rod end was the sole proximate cause of the failure of the component, the failure to extend and lock the landing gear, and the subsequent damage to the aircraft.

Expert report of Dr. Chisholm, dated January 21, 1997, p. 3. Dr. Chisholm unequivocally concludes that the part in question, the nose gear rod end bearing, failed as the result of its negligent design.

The discovery deadline, originally set for March 25, 1997, was extended to April 25, 1997, in deference to the joint request of the parties based upon the "handling and transfer of the part for inspection by expert witnesses, which has lengthened the process of obtaining expert reports" and to allow time for depositions. Upon receipt and review of Dr. Chisholm's report, Beech felt confident in its ability to defend against the claims, so much so that Beech decided against pursuing depositions or other discovery regarding the basis for Dr. Chisholm's opinions.

Beech's Rule 26(a)(2) expert disclosures were due on or before March 21, 1997. Beech timely filed the report of its expert, Charles R. Morin. Mr. Morin's report essentially attributes the failure of the rod end bearing to "a prior overload event followed by low cycle fatigue crack propagation." He further opines "there is no evidence of a defect **in design or manufacturing.**" Expert report of Mr. Morin (undated) p. 5, (emphasis added).

On September 10, 1997, Dr. Chisholm received additional discovery materials, conducted further examinations and submitted an additional report dated September 24, 1997. In his analysis of these materials, Dr. Chisholm states in Section B of his report,

The disclosure of two (2) prior accidents (C–16.0), involving the subject aircraft as well as the report of C. Morin (C–17.0), and the Beech Aircraft Company (BAC) analysis of static and dynamic loads on the landing gear components and rod end specifications prompted the author to examine the load path associated with a partial landing gear deployment and crash landing.

An examination of BAC landing gear drawings (C–12.0) revealed that under the conditions of a partial deployment/landing scenario, the rod ends, rods and gear train are all loaded in compression not tension, as suggested in Morin's report (C–17.0). As a consequence of this compression loading, a so called "pop in" crack (created under tensile loads) is not possible. Further, any bending loads which have both tensile and compressive components would be most unlikely to produce the symmetry observed at the edges of the grease fitting hole under any realistic compression load induced landing gear failure (there is no evidence of a bending load failure in the part).

No satisfactory explanation of the failure can be forthcoming from the above theory, and therefore, a further examination was conducted.

Expert report of Dr. Chisholm, dated September 24, 1997, p. 2. In Section E, entitled "Analysis of the Failure," Dr. Chisholm makes reference to "material defects (cracks and inclusions)," . . . "anomalies in material" and other factors that "are believed to be the cause of the subject rod end failure." Not surprisingly, his "Conclusions and Opinions"

now include suggestions of negligence in manufacturing.[1]

A careful review of the original and subsequent opinions of Dr. Chisholm lead to the firm conviction that the September 24, 1997 report is "intended solely to contradict or rebut" the report prepared by Mr. Morin. This view is supported by references in Congressional's memorandum in opposition to Defendant's Motion, which state that "[o]n September 24, 1997, Dr. Chisholm amended his earlier report after reinspecting the nose gear end rod bearing and reviewing Mr. Morin's report." The opposition further notes that "Dr. Chisholm amended his report after reviewing the work of defendant's experts and then re-examining the effective nose gear end rod." Under these circumstances, the use of Dr. Chisholm's September 24, 1997 report · on behalf of Congressional is governed by Fed.R.Civ.P. 26(a)(2)(C), which required the disclosure of such a report within 30 days after the disclosure of Mr. Morin's report on behalf of Beech. The rules regarding the disclosure of expert testimony states,

> These disclosures shall be made at the times and in the sequence directed by the Court. In the absence of other directions from the Court or stipulation by the parties, the disclosures shall be made at least 90 days before the trial date or the date the case is to be ready for trial or, *if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under paragraph (2)(B), within 30 days after the disclosure made by the other party.* The parties shall supplement the disclosures when required under subdivision (e)(1).

Fed.R.Civ.P. 26(a)(2)(C) (emphasis added). Since the subsequent report of Dr. Chisholm is being used to rebut Mr. Morin's report, plaintiff was required to disclose the subsequent report within 30 days of the receipt of Mr. Morin's report. *See Fuller v. Volvo GM Heavy Truck Corp.*, 1995 WL 489542 (N.D.Ill.1995). The rule uses the term

"shall" and is mandatory upon the parties. Congressional was obligated to provide this report in a timely fashion.

If Rule 26(a)(2)(C) and the Court's Scheduling Orders are followed properly, the parties will have ample time to conduct discovery, obtain additional rebuttal experts and/or opinions, and to submit any necessary supplementations of discovery. In the event additional time for discovery is needed, a party can move for such an extension of time without disturbing the orderly schedule of events, inconveniencing the parties or incurring unnecessary expense as final trial preparations are being made. In *Dixon v. Certainteed Corp.*, 168 F.R.D. 51 (D.Kan.1996), the Court considered similar concerns, but reached a different result. In Dickson, plaintiffs sought leave to name rebuttal witnesses. Moreover, the trial date was more than six months away. Here, Congressional did not seek leave to name rebuttal witnesses during a pre-trial period which would not be disruptive. Beech did not learn of the September 24, 1997 report until October 17, 1997, which is more than three weeks later. "In any event, disclosure only a few days before trial differs materially from the facts here. Trial remains over six months away." *Id.* at 55. The Pre–Trial Order, which is to govern the remaining proceedings in the present matter, was due within twelve days of Congressional's disclosure. The jury trial was scheduled to begin less than one month later. While trial is not "only a few days" away, given the nature of the case, issues presented and experts involved, the court believes this is the kind of material difference which weighs heavily against plaintiff.

Congressional contends that the production of the September 24, 1997 report is governed by Fed.R.Civ.P. 26(e)(1). This rule, when read in conjunction with Fed.R.Civ.P. 26(a)(3) and Local Rule 106.4(c), would ordinarily require the supplementation of expert disclosures no later than the time

---

**1.** While Dr. Chisholm's initial theory was one of negligent design based upon the presence of the "defectively designed hole for the grease fitting," Beech notes that Dr. Chisholm's new report now reflects that the margin of safety for the rod end bearing as designed was too small. In Beech's view, this is a new theory of negligent design. The Court does not have enough information to rule at this time whether there are actually two negligent design theories. Therefore, a ruling on this matter shall be deferred until trial date.

of the filing of the Pre–Trial Order.[2] Congressional is correct only to the extent the supplemented reports are not "intended solely to contradict or rebut" other expert reports previously disclosed under the rules. Under subsection (e)(1), Congressional is under a "duty to supplement or correct the disclosure or response to include information thereafter acquired" where the original disclosure is incomplete or incorrect and the newly acquired information has not otherwise been provided. Had Dr. Chisholm's original report in some way addressed the question of negligent manufacturing, an argument could be made that any subsequent report would be a proper supplement. Here, however, the issue of negligent manufacturing was first raised in the report by Beech's expert in March 1997. Since Dr. Chisholm addressed the claim of negligent manufacturing for the first time in his September 24, 1997 report, it is either an untimely rebuttal report, or the untimely submission of an initial disclosure which should have been submitted no later than January 24, 1997, in accordance with the original Scheduling Order.[3] If parties are allowed to change the nature and scope of their expert's opinions after the Court has imposed deadlines and as late as the time of submission of the Pre–Trial Order, parties would in effect be encouraged to wait until such time to make known new theories, thereby minimizing the opportunity for the exploration of countervailing opinions. Such "trial by ambush" is precisely what the 1993 revision of the Federal Rules is attempting to eliminate.

Congressional was required to disclose its rebuttal report no later than April 21, 1997. Under the time constraints of the Amended Scheduling Order, Beech could have immediately sought to dispose Dr. Chisholm or seek an extension of time to do so. Here, however, Congressional's nearly six month delay prevented Beech from making such an election during a period that would not eviscerate the long-standing discovery plan and trial date. Such a practice is unacceptable. *See Asia Strategic Investment Alliances Ltd. v. General Electric Capital Services, Inc.,* 173 F.R.D. 305 (D.Kan.1997). To allow Congressional's proposed "supplementation," would create the proverbial "moving target" that is so offensive to civil litigants. If Congressional had multiple and/or alternative theories of design and manufacturing defects, the rules provide a format for the orderly discovery of the support for each claim without surprise. Congressional will not be allowed to rely upon Dr. Chisholm's new report at this late date.

## II. Beech Has Been Prejudiced By The Untimely Disclosure Of The September 24, 1997 Report.

Beech has proffered that if the September 24, 1997 report had been disclosed in a timely fashion, Beech would have noticed the deposition of Dr. Chisholm to determine the full factual basis for his new opinions and to prepare for cross examination. Beech also states it would have secured an expert and supplemented prior expert's reports. Beech has now made significant preparations for trial, as reflected in many of its pre-trial submissions received by the Court. Beech even suggests that Congressional, who has possession of the part in question, may have subjected the rod end to destructive testing or otherwise altered its original condition. The Court considers these concerns persua-

---

**2.** The local rule reads as follows:
The submission of a pre-trial order containing the information required by Local Rule 106.2 within the time limits prescribed by Local Rule 106.3 and Local Rule 106.4 shall be deemed to constitute compliance with Fed.R.Civ.P. 26(a)(3).
Local Rule 106.4(c) (D.Md.)

**3.** Congressional relies on the Complaint's reference to negligent manufacturing to cure this defect. The mere fact that a claim for negligent manufacturing is mentioned in the Complaint is not controlling. If so, original expert disclosures could utterly fail to relate to filed claims or defenses, with the expectation that a party could simply submit a cure all report on the eve of trial. Opposing parties would then be forced to request a continuance to obtain an expert's opinion addressing the new disclosures made. Such a practice would be contrary to the scheduling orders and timing set forth in the rules of procedure, which are designed to disclose the factual support for opinions held by experts long before the trial date. The Court's issuance of discovery deadlines would become laughable.

sive, and that Beech has suffered unnecessary prejudice.

In light of the pending trial date, the Court does not consider certain alternatives reasonable under the circumstances. Discovery closed more than six months ago. Beech should not be required to conduct an "under-the-gun" deposition and find rebuttal expert opinions at this stage of the litigation. Beech has formulated its trial strategy over many months, and to allow a new theory of liability in the eleventh hour would result in substantial investments of additional time, labor and money. Further delay of this case is likewise unreasonable. On June 18, 1997, this matter was referred to me by the Honorable Deborah K. Chasanow for trial. On July 28, 1997, a mutually agreed upon trial date was established with tight deadlines for the filing of the Pre–Trial Order and the scheduling of the Pre–Trial Conference. The report of Beech's expert was filed and available for Congressional's expert in late March, 1997. Inexplicably, Congressional's expert did not receive this report or other materials until September, 1997. This non-disclosure is not harmless and, Congressional has not presented "substantial justification" for its failure to provide timely disclosure. With only a few weeks before the start of trial, Congressional has attempted to place upon Beech a "heavy burden of meeting the new evidence at trial with its own expert's analysis." *See Finley v. Marathon Oil Co.,* 75 F.3d 1225 (7th Cir. 1996). Under Fed.R.Civ.P. 37(c)(1), the exclusion of the evidence is mandatory.

### III. *Conclusion.*

Due to the untimely and inexcusable delay of nearly six months before the disclosure of its rebuttal expert report, Congressional is prohibited from presenting any testimony based upon the September 24, 1997 report of Dr. Chisholm as substantive evidence. It is hereby

ORDERED.