Christopher TUCKER et al., Plaintiffs,

v.

OHTSU TIRE & RUBBER CO., LTD., et al., Defendants.

No. Civ.A. AMD 98–1099.

United States District Court, D. Maryland.

May 7, 1999.

James P. Ulwick, Karl Joseph Nelson, John Augustine Bourgeois, Kramon and Graham, Baltimore, MD, for plaintiffs.

Joel A. Dewey, Harold Bruce Dorsey, Piper & Marbury, Baltimore, MD, for defendants.

## MEMORANDUM AND ORDER

GRIMM, United States Magistrate Judge.

Presently pending is defendants' motion to exclude plaintiffs' amended expert witness report and testing, the plaintiffs' opposition, and the defendants' reply. (Paper nos. 14, 15 and 17, respectively). This case has been referred to me for resolution of discovery disputes. 28 U.S.C. § 636(b); Local Rule 301.5.a. I have considered the parties' submissions, as well as additional materials requested in a letter of April 26, 1999.[1] No hearing is necessary. Local Rule 105.6. For the reasons stated below, the defendants' motion is denied.

---

1. On this date, I wrote to counsel to request photographs of the tire which is the subject of this litigation, or, in the alternative, to view the tire, and also requested that plaintiffs' counsel provide me with a copy of any report prepared by Dr. Alan Milner, who performed tests on the steel cord removed from the tire by plaintiffs' expert witness, Mr. Rex Grogan.

## BACKGROUND

Plaintiffs were very seriously injured as a result of an automobile accident which occurred on April 12, 1996. They were driving on Interstate 95 in Maryland when the left rear tire of the 1991 Mazda minivan in which they were riding blew out, causing the driver to lose control and the van to roll over. The tire in question was manufactured by defendant Ohtsu Tire and Rubber Co., Ltd., ("Ohtsu") in 1984, and placed on the Mazda minivan in 1996. Plaintiffs contend that the tire in question was defectively designed and manufactured.

Under the scheduling orders issued by the Court, plaintiffs were required to make their Fed.R.Civ.P. 26(a)(2)(B) pretrial expert disclosures on or before August 3, 1998 and the defendants' Rule 26(a)(2) disclosures were to be made on or before January 25, 1999.[2] The discovery cutoff was March 22, 1999, and a firm trial date of July 19, 1999 was set.

Plaintiffs timely filed their Rule 26(a)(2)(B) disclosure[3] for the expert who is the subject of the pending motion, Mr. Rex Grogan, on August 3, 1998. (Defendants' motion to exclude, Tab 1). Mr. Grogan's report was dated February 27, 1998. *Id.* It reflected that he reviewed various written materials, including x-rays, photographs, and reports prepared by others, but that he performed no tests on the tire except to examine it with the naked eye. *Id.* (Plaintiffs' opposition memorandum, Tab 2, deposition of Mr. Grogan of September 11, 1998, at p. 20.)[4] In his report, Mr. Grogan expressed three opinions relevant to Ohtsu's liability: 1) it failed to adequately warn users and tire dealers about certain structural unsoundness of the tire; 2) the steel cord used within the tire did not use "open center" construction, which prevented rubber penetration and promoted tread and belt separation; and 3) that Ohtsu failed to adopt the "nylon overbelt principle" to the breaker edges of the tire, which resulted in the disintegration of the tire when in use. (Defendant's motion to exclude, Tab 1).

Mr. Grogan was deposed on September 11 and 22, 1998. During the first day, he identified two additional opinions he had reached, not previously identified in his Rule 26(a)(2)(B) disclosure. (Grogan Deposition 1 at p. 9). These opinions were that the steel cord adhesion in the tire was deficient, and there was rubber to rubber separation within the tire. *Id.* Mr. Grogan testified that these additional opinions were based on his examination of some of the steel cords used in the manufacture of the tire. These cords, one of which Mr. Grogan removed from the tire several days before his deposition, were brass covered, to promote adhesion with rubber components of the tire during manufacture.[5] *Id.*

---

2. The original scheduling order set a deadline of August 31, 1998 but it was subsequently moved to January 25, 1999 in an amended order.

3. While the disclosure was timely, it did not comply in all particulars with the requirements of Fed.R.Civ.P. 26(a)(2)(B), in that it consisted of a written report from Mr. Grogan setting out his opinions, and the supporting bases, but not the information required by Rule 26(a)(2)(B) regarding his qualifications, list of publications, compensation, and prior testimony. (Defendants' motion to exclude, Tab 1). Defendants do not complain about these omissions, however, perhaps because the disclosure from their design expert, Mr. James D. Gardner, was similarly lacking. (Plaintiffs' Opposition memorandum, Tab 4).

4. For brevity, hereinafter referred to as "Grogan Deposition 1, at p. ——". References to the transcript of the second day of Mr. Grogan's deposition, taken on September 22, 1998, also located at Tab 2 of plaintiff's opposition memorandum, will be cited as "Grogan Deposition 2, at p. ——".

5. The manufacture of "steel belted" tires employs steel cords, coated with brass. A component of brass is copper. When the tire is vulcanized, sulfur is used to promote a bond between the rubber components of the tire and the steel cords. This bond occurs because of a natural affinity between sulfur and the copper found in the brass. During the vulcanization process, the bonding of the sulphur and copper produces copper sulfide, which results in a tell-tale black discoloration

at p. 11. Mr. Grogan's opinion was that the shiny appearance of the brass coating of the steel cord he removed and examined, and the absence of any black discoloration, demonstrated that proper adhesion between the cords and the rubber components of the tire had not taken place during vulcanization. *Id.* at p. 19, 22, 23, 37, 38.

Defendants' counsel skeptically questioned Mr. Grogan regarding his new opinions, particularly the fact that his conclusion regarding defective adhesion between the steel cords and rubber elements of the tire was based only upon his visual examination, unsupported by any "testing" or examination under magnification. *Id.* at p. 19, 20, 21, 22, 46, 47. At the conclusion of the second day of Mr. Grogan's deposition, he was asked whether he had a "current contemplation" of performing any future tests, to which he replied "I don't envisage any at the moment, but, again, subject to what is revealed by discovery, then I may." (Grogan deposition 2 at p. 316). Shortly thereafter, Mr. Grogan's deposition ended, with defendants' counsel "reserving the right" to redepose him on any additional work he did, or changes in opinions he reached. *Id.* at p. 317.

On March 12, 1999, ten days before the discovery cutoff, and more than four months before the scheduled trial date, plaintiffs' counsel hand delivered to defendants' counsel a letter advising that Mr. Grogan's Rule 26(a)(2)(B) disclosure was being supplemented to reflect that Mr. Grogan had done some additional investigation, specifically, obtaining a report of testing and analysis of the steel cord he had removed from the tire in September, 1998. The testing was done by RAPRA

Technologies, Ltd., and Dr. Alan Milner. (Defendants motion to exclude, Tab 3). Plaintiffs' counsel advised that neither consultant would be offered as an expert during plaintiffs' case in chief, but that Mr. Grogan would rely upon their findings as part of the basis for the opinions he had already disclosed. According to plaintiffs' counsel, the testing done by RAPRA and Dr. Milner confirmed the absence of copper sulfide on the brass coating of the steel cord removed by Mr. Grogan. *Id.* Attached to the letter was a supplemental Rule 26(a)(2)(B) disclosure by Mr. Grogan, which incorporated the additional opinions previously disclosed during his deposition, and which referred to the testing done by RAPRA.[6] *Id.*

Defendants' counsel made no efforts to obtain additional discovery from Mr. Grogan regarding the testing by RAPRA and Dr. Milner. Instead, the pending motion to exclude was filed. Defendants' counsel asserts that the Court should exclude the supplementation of Mr. Grogan's disclosure, and not permit him to rely on the RAPRA and Milner testing, because: 1) the supplementation of his Rule 26(a)(2)(B) disclosure was untimely, and 2) the removal of the steel cord from the tire by Mr. Grogan in September, 1998, was *ex parte* destructive testing, which was done without notice to defendants. Therefore, defendants assert, Mr. Grogan should not be permitted to rely on the testing done by RAPRA and Dr. Milner on the steel cord. Resolution of the first issue turns on the interplay between Fed.R.Civ.P. 26(a)(2)(B), 26(e)(1), and Local Rule 106. Resolution of the second issue is governed by circuit authority regarding the doctrine of spoilation of evidence.

---

of the brass covered steel cords. (Grogan deposition 1 at p. 10; *see also* deposition of James Gardner, plaintiffs' opposition memorandum, Tab 3, p. 151 (hereinafter "Gardner deposition at p. ——")).

6. Defendants' counsel asserts that he did not receive a copy of the RAPRA report until after the supplementation of Mr. Gardner's Rule

26(a)(2)(B) disclosure, and further states that, as of the date the pending motion was filed, he had not received a copy of any report produced by Dr. Milner. On April 26, 1999, defendants' counsel received a copy of the Milner report, evidently in response to the Court's letter of April 26, 1999, requesting a copy of the report.

## DISCUSSION

Fed.R.Civ.P. 26(c) states that expert witness disclosures required by Rule 26(a)(2)(B) must be made at least 90 days prior to trial, unless otherwise ordered by the Court, and that, once made, they shall be supplemented[7] when required by Rule 26(e). Rule 26(e)(1) states that a party is under a duty to supplement its pretrial disclosures "at appropriate intervals" if it learns that in some material respect the information provided is incomplete, inaccurate, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process. The commentary to this rule states that supplementation "need not be made as each new item of information is learned but should be made at appropriate intervals during the discovery period, and with special promptness as the trial date approaches." Fed.R.Civ.P. 26 advisory committee's note. There is no claim in this case that Mr. Grogan's original Rule 26(a)(2)(B) disclosure was not made within the deadline established by the Court's scheduling order. It is equally clear that when Mr. Grogan testified during the first day of his deposition that he had reached two new opinions, his subsequent testimony about those new opinions was a form of supplementation permitted by Rule 26(e)(1).

Rule 26(e)(1) further states that, with respect to expert disclosures required by Rule 26(a)(2)(B), "any additions or other changes to this information shall be disclosed by the time the party's disclosures under Rule 26(a)(3) are due." Rule 26(a)(3) disclosures are required not later than 30 days before trial, unless otherwise ordered by the Court. The standard scheduling order used by this Court does not ordinarily contain a deadline for making Rule 26(a)(3) disclosures, nor did the scheduling orders issued in this case.[8] However, Local Rule 106.4.c, which governs pretrial orders, states that submission of a pretrial order containing the information required by Local Rule 106.2, within the time limits prescribed by Local Rule 106.3, and Local Rule 106.4 "shall be deemed to constitute compliance with Fed. R.Civ.P. 26(a)(3)." Thus, in the absence of contrary direction by the Court, a party could assert, with technical correctness, that the deadline for supplementing Rule 26(a)(2)(B) expert disclosures could be as late as the filing of pretrial submissions as required by Local Rule 106. However, since the rules of procedure are to be construed to reach just, speedy and inexpensive results, Fed.R.Civ.P. 1, a party who delays supplementing Rule 26(a)(2)(B) expert disclosures until the filing of its pretrial submissions, absent compelling reasons for doing so, should not expect the Court automatically to permit the expert to testify at trial about the newly disclosed information, for such action would condone "trial by ambush." *See e.g. Licciardi v. TIG Ins. Group,* 140 F.3d 357, 359 (1st Cir., 1998) (reversing defense verdict procured by "trial by ambush tactics" when defense counsel "supplemented" a defense expert's opinion during trial); *Congressional Air Ltd. v. Beech Aircraft Corp.,* 176 F.R.D. 513, 516 (D.Md.1997) (disallowing submission of a "rebuttal" expert disclosure within twelve days of the due date of the pretrial order, and less than one month before trial).

In this case, plaintiffs' counsel did not wait until the eve of trial to supplement Mr. Grogan's Rule 26(a)(2)(B) disclosure,

7. Fed.R.Civ.P. 26(a)(2)(c) also provides that if a Rule 26(a)(2)(B) disclosure is made solely to contradict or rebut evidence disclosed by an opposing party's expert, the "rebuttal disclosure" must be made within 30 days of the disclosure by the opposing party's expert. A review of Mr. Grogan's supplemental disclosure, his original disclosure, and his deposition testimony makes it clear that the March 12, 1999 disclosure was a supplemental disclosure, governed by Rule 26(e), not a rebuttal disclosure, governed by Rule 26(a)(2)(c).

8. Neither does the standard scheduling order, at present, contain a deadline for supplementing expert disclosures pursuant to Rule 26(e).

but did so ten days prior to the close of discovery, and more than four months before trial.[9] Defense counsel could have scheduled, if not actually taken, additional deposition testimony of Mr. Grogan before the discovery cutoff, or requested a brief extension of discovery for the limited purpose of completing discovery regarding the supplemented opinions. This was not done.

■ Despite the fact that plaintiffs did make timely supplementation of Mr. Grogan's disclosures, the impact of the interplay between Rule 26(a)(2)(B), Rule 26(e)(1) and Local Rule 106.4.c, prohibits the Court from letting the inquiry end there. Indeed, in light of the large window of time allowed by the foregoing rules to supplement expert disclosures, the Court should not automatically permit testimony at trial as to the newly disclosed information if, considering the facts of the case, it is convinced that doing so would be unfair or cause undue delay or expense. In making such a determination, the Court should consider the following factors: (1) the explanation for making the supplemental disclosure at the time it was made; (2) the importance of the supplemental information to the proposed testimony of the expert, and the expert's importance to the litigation; (3) potential prejudice to an opposing party; and (4) the availability of a continuance to mitigate any prejudice.[10] Consideration of these factors demonstrates why the defendants' motion to exclude must be denied.

■ The March 12, 1999 supplementation of Mr. Grogan's Rule 26(a)(2)(B) disclosure was both technically timely, and sufficiently in advance of trial that it cannot fairly be characterized as "ambush tactics." Defendants previously had been made aware during Mr. Grogan's deposition in September, 1998 that he had reached the conclusion that there had been improper adhesion between the steel cords and the rubber components of the tire, based upon his examination of the brass coated steel cord removed from the tire just before his deposition. The RAPRA report reflected the results of testing which confirmed Mr. Grogan's conclusion, and was dated February 24, 1999, sixteen days before the supplementation. This does not suggest that plaintiffs' counsel "sat" on the results of the report before supplementing Mr. Grogan's disclosure.

Defendants make much of the fact that, at his deposition, Mr. Grogan testified that he had no "current contemplation" of performing additional tests. While true, he added that this could change, depending upon the results of discovery. Indeed, defendants' counsel took the precaution of "reserving the right" to continue Mr. Grogan's deposition if he did perform additional work. As discussion of the next factor demonstrates, following Mr. Grogan's deposition, there was good reason for the plaintiffs to be concerned about the basis for his opinion regarding poor steel cord-rubber adhesion, and efforts to have his opinion independently tested were reasonable, and prudent. While it may be that

9. It is, however, troubling that plaintiffs' counsel apparently did not provide a copy of the RAPRA and Milner reports, which formed the basis of the supplemental opinions expressed by Mr. Grogan, until much later, and, in the case of Dr. Milner's report, it appears as though it was provided only after it was requested by the Court in connection with ruling on the pending motion. Rule 26(a)(2)(B) requires that expert disclosures contain, inter alia, "the data or other information considered by the witness in forming the opinions." The March 12, 1999 supplemental report should have contained both the RAPRA and Milner reports (or, if the Milner report was not yet in written format, its contents should have been summarized), inasmuch as it is apparent that the favorable test results were the sole reason for the supplementation of Mr. Grogan's report.

10. *See Reliance Ins. Co. v. Louisiana Land and Exploration Co.,* 110 F.3d 253, 257 (5th Cir. 1997) (identifying similar, though not identical, factors); *Sullivan v. Glock,* 175 F.R.D. 497, 506–07 (D.Md.1997) (identifying similar factors governing resolution of motions to exclude expert testimony filed pursuant to Fed. R.Civ.P. 37(c)(1)).

this testing could have been done more quickly during the interval between September 1998 and February 1999, I cannot conclude that the time actually taken was excessive, or motivated by improper intent.

■ Second, both the opinion expressed by Mr. Grogan regarding allegedly improper adhesion between the steel cords and the rubber components of the tire, and the additional testing which supported this conclusion, are of central importance to the plaintiffs' case, as they go to the heart of the causation of the tire blow-out. Indeed, in light of the Supreme Court's recent decision in *Kumho Tire Co., Ltd. v. Carmichael,* —— U.S. ——, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), (approving application of the four *Daubert* factors,[11] if appropriate, in assessing the admissibility of the opinions of a plaintiff's tire defect expert regarding causation), it requires little foresight to anticipate the arguments which defendants likely would make in opposing Mr. Grogan's opinion about poor adhesion between the steel cords and rubber elements of the tire. Defense counsel's pointed questioning of Mr. Grogan during his deposition regarding his failure to "test" the conclusions he reached following his visual inspection of the steel cords pres-

aged an argument that one of the *Daubert* factors, whether the expert's conclusions were corroborated by testing, militates against admissibility of Mr. Grogan's opinion. Thus, the supplementation of Mr. Grogan's Rule 26(a)(2)(B) disclosure by corroborating testing goes to an issue of unquestionable importance to the litigation.[12]

The third factor, whether there is prejudice to the party opposing the supplementation of the expert disclosure, also militates against the defendants' position. First, the supplementation of Mr. Grogan's opinion was made prior to the discovery cut-off, and more than four months before trial, distinguishing the facts of this case from the circumstances of *Congressional Air,* 176 F.R.D. at 515 (D.Md.1997) (disallowing submission of a "rebuttal" expert disclosure within twelve days of the due date of the pretrial order, and less than one month before trial). Furthermore, given Judge Davis' ruling of March 25, 1999, rescinding the discovery cutoff, canceling the July 19, 1999 trial date (without rescheduling it), and referring pending discovery disputes to the undersigned, there is no danger that the defendants will be surprised at trial. Indeed, Judge Davis'

---

**11.** The four factors identified in the *Daubert* case are: whether the method employed by the expert can be tested; whether the principle underlying the analysis has been subjected to peer review; whether there is a known error rate associated with the analysis; and whether the methods employed by the expert have been generally accepted within the relevant community of experts. *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 594, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

**12.** Defendants draw a more sinister conclusion regarding the supplementation, arguing that it is an effort by plaintiffs to do an "end run" around their inability to designate new experts at this late date. Defendants assert that if Mr. Grogan is permitted to rely upon the testing done by others, who themselves are not able to testify at trial, this will, in effect, allow plaintiffs to have the benefit of expert testimony they could not directly offer. Defendants' concern is legitimate, but premature. While it certainly is true that Fed. R.Evid. 703 permits an expert to base his or

her opinion on facts which are not themselves admissible, the rule does not mandate that the trial judge must allow the inadmissible facts to be disclosed to the jury as part of the expert's factual basis if the court concludes that they are not sufficiently trustworthy. There is ample authority allowing the trial judge to either decline to allow the expert to testify to the substance of the inadmissible facts, *see Tyger Constr. Co. v. Pensacola Constr. Co.,* 29 F.3d 137, 142 (4th Cir.1994); *American Bearing Co. Inc. v. Litton Indus. Inc.,* 540 F.Supp. 1163, 1174 (E.D.Pa.1982), or, alternatively, give a limiting instruction under Fed.R.Evid. 105 that the inadmissible facts cannot be admitted for their substantive truth. *See Paddack v. Dave Christensen, Inc.,* 745 F.2d 1254, 1261–62 (9th Cir.1984); *Engebretsen v. Fairchild Aircraft Corp.,* 21 F.3d 721, 729 (6th Cir.1994). Any concerns defendants have about use of the testing results at trial can be adequately addressed in a motion in limine, filed pursuant to Fed.R.Civ.P. 16(c) and Fed.R.Evid. 104(a).

order contemplates additional discovery, dispositive motions practice, and possibly a referral for a settlement conference. Trial, therefore, is hardly imminent. To be sure, defendants would rather not undertake the time and expense of further discovery regarding Mr. Grogan's opinions, but this alone is not sufficient to grant their motion. Similarly, the fourth factor, availability of a continuance to mitigate any prejudice, is inapplicable in this case, given the cancellation of the July trial date. There will be ample time for the defendants to take additional discovery regarding the supplemental information before the trial is rescheduled.

Application of the four factors discussed above compels the denial of the defendants' motion.[13] However, the defendants will be allowed reasonable additional discovery regarding the RAPRA and Milner reports, and their impact on Mr. Grogan's opinions. This may include additional deposition of Mr. Grogan (not to exceed six hours in length, absent consent of the plaintiffs or Order of the Court), and depositions of a representative of RAPRA and Dr. Milner. Once this additional discovery has take place, defendants will have the opportunity to supplement their expert disclosure and, provided they demonstrate good cause, will be permitted to file a motion requesting permission to designate a rebuttal expert or experts regarding the RAPRA and Milner reports. The foregoing discovery should take place on an expedited basis. Counsel for the defendants and plaintiffs will confer and, within 14 days of this Order, will provide the Court with a proposed schedule to accomplish the discovery allowed by this order.

█ Defendants also argue that the supplementation of Mr. Grogan's opinion

should be disallowed, and he should not be permitted to rely on the RAPRA and Milner reports because Mr. Grogan engaged in "*ex parte* destructive testing" of the tire which is the subject of this litigation. During his deposition, Mr. Grogan admitted that a few days earlier he pulled one of the exposed steel cords out of the tire to look at its underside. (Grogan deposition 1 at p. 12–13). Apparently, this same cord was given to RAPRA and Dr. Milner for their examination, and, presumably, is still available for examination by defense experts. At my request, the parties supplied me with a copy of Dr. Milner's report, which contains a series of color photographs of the tire including the location where Mr. Grogan removed the steel cord. It is apparent that Mr. Grogan's actions did not result in the type of wholesale destruction of evidence which so troubled the trial court in *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148 (4th Cir.1995). Instead, it appears that, at most, Mr. Grogan removed one of the cords, and, that none of the testing done by RAPRA or Dr. Milner destroyed the cord. Accordingly, for purposes of ruling on a request for discovery sanctions, there is an insufficient basis to grant the relief the defendants request. As the Fourth Circuit stated in *Vodusek*, the spoliation of evidence doctrine is a rule of evidence, not an affirmative defense. *See id.* at 155. If the defendants believe that Mr. Grogan's actions prejudiced their ability to defend against the plaintiffs' claims,[14] they are free to file a pretrial motion in limine, pursuant to Fed.R.Civ.P. 16(c) and Fed.R.Evid. 104(a), with Judge Davis, and request an appropriate instruction that the jury may draw an adverse inference against the plaintiffs if it is determined that spoliation in fact occurred. My ruling should not be taken

---

13. The denial is without prejudice to the defendants ability to file any pretrial motion in limine pursuant to Fed.R.Civ.P. 16(c) and Fed.R.Evid. 104(a), regarding Mr. Grogan's trial testimony, and whether he may testify about the contents of the RAPRA and Milner reports. *See supra* n. 12.

14. In this regard, I note that Mr. Gardner, the defendants' expert, did not claim in either his written report, or deposition, that his ability to examine the tire and reach opinions was adversely impacted by the actions of Mr. Grogan.

as approval of the manner in which Mr. Grogan removed the steel cord. It simply means that, in the circumstances of this case, the record is not sufficient to grant the relief which the defendants request. Defendants will be afforded an opportunity, if desired, to inspect the tire and the wire removed from it, and subject that wire to testing of their own. In addition, they shall be permitted to determine the precise location of the place where the wire was removed. This additional discovery shall take place within the period already discussed in connection with the supplementation of Mr. Grogan's disclosure.

## CONCLUSION

For the reasons stated above, the defendants' motion is denied. A separate order shall issue.

### *ORDER*

In accordance with the foregoing memorandum, it is this 12th day of May, 1999, NUNC PRO TUNC TO MAY 7, 1999 hereby ORDERED that:

1. Defendant's Motion to Exclude Plaintiffs' Amended Expert Witness Report and Testing, is DENIED;

2. that Counsel for the Defendants and Plaintiffs will confer and, within 14 days of this Order, provide the Court with a proposed schedule to accomplish the discovery herein allowed, with respect to both the RAPRA and Milner reports, and their impact on Mr. Grogan's opinions and any additional testing of the removed tire cord;

3. that the Clerk of the Court shall mail copies of this Memorandum and Order to counsel of record.